578 A.2d 580

**The CITY COUNCIL OF the CITY OF HAZLETON, Pennsylvania et al., Appellants,**

**v.**

**The CITY OF HAZLETON, Pennsylvania, et al., Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 2, 1990.

Decided July 23, 1990.

Reargument Denied September 12, 1990.

Edward D. Reibman, Allentown, for appellants.

Charles P. Gelso, with him, John P. Moses, Moses, Gelso and Prociak, and Carl N. Frank, Farrell, Frank and Mattern, Wilkes Barre, for appellees.

Before CRAIG and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

CRAIG, Judge.

The Hazleton City Council appeals an order of the Court of Common Pleas of Luzerne County that declared null and void a city ordinance that would have amended the city's Administrative Code to vest in the council, rather than in the mayor, the power to appoint members of municipal authorities.

The sole issue here is one of law: Do the relevant statutes permit the city council, in an Optional Plan B form of third class city government, to be the appointing power with respect to municipal authority members?

The facts are as follows. On November 5, 1985, the voters of Hazleton, a city of the third class, elected to change the city's form of government from a commission type to an Optional Plan: Executive (Mayor)—Council Plan B under the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, No. 62, §§ 101–1309, *as amended,* 53 P.S. §§ 1–101—1–1309 (Optional Plans Law). On January

25, 1988, to implement the new government, the council passed Ordinance No. 88-1, known as the Administrative Code of the City of Hazleton.

Section 401 of that code, without the attempted amendment, states:

Article IV—Section 401. *Appointment of Members to Authorities, Boards and Commissions.* Where the appointment of members to authorities, boards, or commissions is vested in the city by statute or ordinance, such member or members shall be appointed by the Mayor, with the advice and approval of Council.

The council adopted Ordinance 88-56 on January 9, 1989, amending Section 401 to read as follows:

Article IV—Section 401. *Appointments of Members to Authorities, Boards, and Commissions.* Where the appointment of members to authorities is so stated in the Municipal Authorities Act (53 P.S., Section 309), said appointment is hereby granted by the Governing Body also known as the Council of the City of Hazleton. Whereby the appointment of boards or commissions is vested in the city by statute or Ordinance such member or members shall be appointed by the Mayor, with the advice and approval of Council.

Be it further resolved that any and all Ordinances or parts of Ordinances inconsistent with this Ordinance be and the same are hereby repealed.

Thus, Ordinance No. 88-56 would amend the original code by vesting in the council the power to appoint members to municipal authorities. The mayor would retain the power conferred under the original text of Section 401 to appoint members of "boards and commissions."

The mayor vetoed the ordinance; however, the council unanimously overrode the veto. The council then appointed Hazleton residents to positions on various municipal authorities.

Section 1221 of the Optional Plans Law, *as amended,* 53 P.S. § 1-1221, reads as follows:

The *appointment power of the chief executive* of the municipality under any of the plans authorized by this act *shall include the appointment of members of boards and commissions authorized by this act, by general law now or hereafter enacted, or by action of municipal council.* All such appointments shall be with the advice and consent of a majority of municipal council. (Emphasis added.)

The relevant provisions of the Municipal Authorities Act of 1945 (Authorities Act), Act of May 2, 1945, P.L. 382, *as amended*, §§ 1–19, 53 P.S. §§ 301–322, state:

§ 302.  **Definitions**

The following terms whenever used or referred to in this act shall have the following meanings, except in those instances where the context clearly indicates otherwise:

(b) The term "Board" shall mean the governing body of an Authority.

Section 2 of the Authorities Act, *as amended*, 53 P.S. § 302.

§ 309.  **Governing body**

A.  The Powers of each Authority shall be exercised by a governing body (Herein called the "Board") composed as follows:

(a) If the Authority is incorporated by one municipality the board shall consist of such number of members not less than five as shall be set forth in the articles of incorporation or amendment thereto. *The governing body of such municipality shall appoint the members of the board,*

. . . . .

Section 7 of the Authorities Act, *as amended*, 53 P.S. § 309 A(a).  (Emphasis added.)

The Optional Plans Law expressly defines "governing body" as:

. . . . [B]oards of county commissioners, *city councils,* borough or incorporated town councils, commissioners of townships of the first class, and supervisors of townships

of the second class as their successor forms of government. (Emphasis added.)

Section 102 of the Law, 53 P.S. § 1–102.

The mayor contends that this court should interpret section 1221 of the Optional Plans Law as giving the mayor (the "chief executive") power to appoint members of authorities, as being included within the power to appoint members of "boards and commissions" because the Authorities Act refers to the governing body of an authority (the appointed members) as a "Board".

By that reading, the mayor assumes that the words "authorized ... by general law now ... enacted", emphasized in our quotation of section 1221 above, refer to laws authorizing "boards and commissions."

The mayor's analysis also assumes that, when the legislature passed the Optional Plans Law, its section 1221 impliedly repealed contrary appointment provisions of acts which the general assembly had earlier adopted, such as the Authorities Act, expressly placing the appointment power in a governing body.

The contrary contention is that the words "authorized ... by general law now ... enacted," section 1221, modify the preceding word "appointment," so that the Optional Plans Law would have to be read as confirming a mayoral appointment power only when the other statute already authorizes appointment by the mayor.

Therefore, our decisive analysis here must first determine whether the Optional Plans Law, in defining the mayor's appointment power, extends it to "boards and commissions" authorized by other laws, or extends it only to situations where the other law authorizes a mayoral appointment.

The conclusion must be that an ordinary, unstrained reading of the passage indicates that it refers to "boards and commissions" authorized by other laws, and therefore does not limit the mayor's power to appoint members to boards or commissions only in those situations where the

other law expressly names the mayor as the appointing power.

■ Next, given that the Optional Plans Law extends the mayor's appointive power to all boards and commissions authorized by law, the further question is whether the board or governing body of an authority comes within the concept of "boards and commissions" as used in the Optional Plans Law.

This court's conclusion is that the concept of "boards and commissions" in section 1221 of the Optional Plans Law is limited to boards and commissions *within* the city government.

■ The unique nature of municipal authorities created under the Municipal Authorities Act supports the council's position. As the council points out, authorities are "bodies politic and corporate", independent agencies of the Commonwealth and part of the sovereignty of the State, *Simon Appeal,* 408 Pa. 464, 468–9, 184 A.2d 695 (1962), and are not regarded as entities related to the general administration of a municipality.

■ The legislature's label for an authority's governing body, as a "board", appears merely to provide a shorthand reference in the Authorities Act to the term "governing body", as used in the Act, and cannot be regarded as an expression of legislative intent to equate the governing body of an authority with the boards and commissions common to the normal administration of a city or municipality.

■ Furthermore, as the council points out, in accordance with the rules of statutory construction, when the legislature includes specific designations in an act, omissions from the list of items or things mentioned should be regarded as exclusions. *Samilo v. Pennsylvania Insurance Department,* 98 Pa.Commonwealth Ct. 232, 510 A.2d 412 (1986). The legislature's omission of the word "authorities" in section 1221 should be regarded as an exclusion

from the list of entities (boards and commissions) included in that section.

The appointing power with respect to members of authorities therefore remains in the governing body, where the Authorities Act expressly puts it, and section 102 of the Optional Plans Law (quoted above) expressly states that the governing body in this third class city is the city council.

The mayor raises comparative arguments by pointing to the Pennsylvania Municipalities Planning Code and the effect that one interpretation or the other would have upon the powers of municipal executives or councils to define, and appoint the members of, planning commissions and zoning hearing boards. However, undertaking such a collateral interpretation cannot be determinative here, particularly because planning commissions and zoning hearing boards, unlike authorities, are agencies within the framework of municipal government itself, and therefore present distinguishable examples.

The decision of the trial court is reversed.

## ORDER

Now, July 23, 1990, the decision of the Court of Common Pleas of Luzerne County, dated August 28, 1989, at No. 18E 1989, is reversed.

PELLEGRINI, Judge, dissenting.

I dissent. By allowing the Hazleton City Council to make appointments to authority boards rather than the mayor, that municipality's chief executive officer, the majority misinterprets the plain language of Section 1221 of the Home Rule and Optional Plans Law. In the process, the majority ignores the rationale behind the General Assembly's provision for Optional Plans and distorts the governmental scheme established by the General Assembly when it provided for Optional Plan forms of government.

To allow local municipalities flexibility in the organization and operation of municipalities, Article 9, Section 3[1] of the Pennsylvania Constitution mandated that the General Assembly provides for the adoption of optional plans of government for all municipalities in the Commonwealth. Carrying out that mandate, as well as the mandate contained in Article 9, Section 2[2] regarding Home Rule, the General Assembly enacted the Home Rule and Optional Plans Law, Act of April 13, 1972, No. 62, §§ 101–1309, *as amended*, 53 P.S. § 1–101—§ 1–1309. A municipality desiring to make a change in its form of government, besides having the right to draft its own Home Rule Charter, had the choice of choosing one of the Optional Plans that the General Assembly provided.[3]

1. Article 9, § 3 provides:
   Municipalities shall have the right and power to adopt optional forms of government as provided by law. The General Assembly shall provide optional forms of government for all municipalities. An optional form of government shall be presented to the electors by initiative, by the governing body of the municipality, or by the General Assembly. Adoption or repeal of an optional form of government shall be by referendum.

2. Article 9, § 2 provides:
   Municipalities shall have the right and power to frame and adopt home rule charters. Adoption, amendment or repeal of a home rule charter shall be by referendum. The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors. If the General Assembly does not so provide, a home rule charter or a procedure for framing and presenting a home rule charter may be presented to the electors by initiative or by the governing body of the municipality. A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

3. Sections 2 and 3 of Article 9 were added to the Pennsylvania Constitution to free municipalities from the straight jacket imposed on their forms of government by the various city, township and county codes. Because the codes, for the most part, provided for commission forms of government where the executive and legislative branches were co-mingled, the Optional Plans, in order to provide an "option," split those powers, investing in "chief executive" officers more or less power depending on the Optional Plan adopted.

By referendum placed before the voters through the Government Study Commission process, Hazleton chose to change from a commission form, where the council was both an executive and legislative body, to Optional Plan B. Executive (mayor)—council form of government. Optional Plan B provides for a strong mayor form of government, as all Optional Plans form a clear demarcation between executive and legislative powers. Under Optional Plan B, the executive power is vested in the Mayor, with council being limited to acting in a legislative capacity only. Section 511 of the Optional Plans Law. The mayor appoints and removes all department heads and has veto power over all legislation subject to override.

Section 1221 of the Optional Plans Law, 53 P.S. § 1–1221 [4], consistent with the other provisions of Optional Plans Law to limit the co-mingling between the executive and legislative powers, vests in the chief executive the authority to appoint all members of all boards and commissions. It provides:

> The *appointment power of the chief executive* [mayor] of the municipality under any of the plans authorized by this act *shall include the appointment of members of boards and commissions authorized by this act, by general law now or hereafter enacted, or by action of municipal council.* All such appointments shall be with the advice and consent of a majority of municipal council. (Emphasis added.)

Hazleton City Council, in a view adopted by the majority, would interpret away the mayor's right to appoint under this provision. Central to the majority's interpretation is its application of the maxim that when the legislature includes specific designations in an act, omissions from the list of items or things mentioned should be regarded as exclu-

---

**4.** While the case involves only an Optional Plan B municipality, since Section 1221 applies to all Optional Plans, our ruling affects who appoints to authority boards in all Optional Plan municipalities.

sions.[5]  The majority holds that by not mentioning authority boards when it held that the mayor shall appoint members of boards and commissions, this omission should be regarded as an exclusion from the mayor's power.  This maxim simply does not apply.  There are no lists of items or things mentioned that an omission which would even imply an exclusion and resort to this maxim.  Section 1221 provides, in the broadest of terms with no exception, that the mayor should appoint all members of boards and commissions.

Not only did the majority err by resorting to application of this maxim, it also erred because it ignored the presumption the General Assembly indicated to be employed when interpreting one of the Home Rule and Optional Plans provisions.  Section 403 of the Law, 53 P.S. § 1–403, provides:

> The general grant of municipal power contained in this article is intended to confer the greatest power of self government consistent with the Constitution of this Commonwealth and with the provisions of and the limitations prescribed by this act.  Any specific enumeration of municipal powers contained in this act or in any other laws *will not be construed in any way to limit the general description of power contained in this article,* and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article.  All grants of municipal power to municipalities *governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.*  (Emphasis added.)

**5.**  Expressio unius est exclusio alterius.  Expression of one thing is the exclusion of another.  It is not a rule of statutory construction set forth in the Statutory Construction Act of 1972.  1 Pa.C.S. §§ 1921–1939.  *See also Sutherland on Statutory Construction,* §§ 47.23–47.24. Our Supreme Court has cautioned that to hold automatically that the legislature's intent does not encompass something not specifically set forth in a statute can sometimes thwart that intent.  *Consumers Education and Protection Ass'n v. Nolan,* 470 Pa. 372, 388–389, 368 A.2d 675, 684 (1977).

The General Assembly mandated an interpretation that would not limit any general description of power. Section 1221 provides that the chief executive appoints all members of all boards and commissions. To interpret it any other way is in direct conflict with this mandate.

A simple analysis of the Home Rule and Optional Plans Law shows that the General Assembly intended that the chief executive officer, in this case the mayor, to appoint members to authority boards. It provides that a chief executive officer shall appoint all members to boards and commissions created by:

1. the Home Rule and Optional Plans Act.
2. *general law now or hereafter enacted.*
3. action of the municipal council.

The Municipalities Authorities Act of 1945 (Authorities Act), Act of May 2, 1945, P.L. 382, *as amended*, §§ 1–19, 53 P.S. §§ 301–322, *is a general law.* It applies throughout the Commonwealth and is of general application. *Department of Labor and Industry v. Altemose Cons. Co.*, 28 Pa.Commonwealth Ct. 277, 288, 368 A.2d 875, 881 (1977). Because it is a "general law" and it establishes the authority board, *ergo*, the Home Rule and Optional Plans Law in clear and unequivocal language provides that the mayor is empowered to appoint authority board members created under the Municipal Authorities Act. The General Assembly could not have stated it any clearer.[6]

Not only is the language unambiguous, it is in harmony and consistent with both of the other provisions of Optional Plan B and those of other Optional Plans by not mingling traditional executive and legislative powers in the council. The power of appointment is an executive function that the General Assembly desired to vest in the municipalities' chief executive officer. By interpreting away the chief execu-

---

6. 1 Pa. C.S. § 1921(a) of the Statutory Construction Act provides that "Every statute shall be construed, if possible, to give effect to all its provisions." The majority, by ignoring the "general laws" language, is not giving that language effect; it is making it surplusage which is disfavored. *Matter of Employees of Student Services, Inc.*, 495 Pa. 42, 432 A.2d 189 (1981).

tive's power to appoint authority board members, this executive power is vested in a council, a result that the General Assembly did not intend. We are required to interpret those provisions with reference to the overall legislative scheme and to carry out their purpose. *Commonwealth, Insurance Department v. Adrid,* 24 Pa.Commonwealth Ct. 270, 355 A.2d 597 (1976). The majority's analysis results in an outcome that is simply inconsistent with the scheme set forth by the General Assembly, as well as the voters of the City of Hazleton's intent and desire when they adopted Optional Plan B.

Accordingly, I dissent from the majority holding and would affirm the trial court.