### FRATERNAL ORDER OF POLICE, QUEEN CITY LODGE NO. 10

v.

**CITY OF ALLENTOWN, Roy C. Afflerbach, in his official capacity as Mayor and Director of Public Safety of the City of Allentown; Chief of Police Stephen Kuhn, in his official capacity as Chief of Police of the Allentown Police Department; Joseph C. Blackburn, in his official capacity as Executive Assistant Chief of Police of the Allentown Police Department; Ronald Manescu, in his official capacity as Assistant Chief of Police of the**

Allentown Police Department; David M. Howells, Jr., in his official capacity as Chief Inspector of the Allentown Police Department; Barbara Hawkins, in her official capacity as Inspector of the Allentown Police Department; R. Dane Merryman, in his official capacity as Inspector of the Allentown Police Department; Francis Peters, in his official capacity as Inspector of the Allentown Police Department; Jose Rodrigez, in his official capacity as Inspector of the Allentown Police Department, Appellants.

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2005.

Decided March 10, 2006.

Michael McAuliffe Miller, Harrisburg, for appellants.

Anthony M. Caputo, Harrisburg, for appellee.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The City of Allentown and various administrative and police officials (City) appeal from an order of the Court of Common Pleas of Lehigh County that granted in part and denied in part motions for

summary judgment filed by both sides in an action filed by the Fraternal Order of Police, Queen City Lodge No. 10(FOP) seeking declaratory, mandamus and quo warranto relief in regard to the appointment of certain persons to newly created managerial positions outside the bargaining unit in the City's Police Department. The City questions whether the trial court erred when it held that the FOP's quo warranto action could proceed despite the fact that the FOP failed to meet the necessary prerequisite of first seeking the intervention of the Attorney General or the District Attorney and whether the court erred in holding that civil service provisions of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701, did not permit the City to appoint certain of the Appellants to executive positions within the Police Department outside of the civil service system.

I

In November 2001 Roy C. Afflerbach was elected Mayor of the City. In early 2002 the newly appointed Chief of Police, Stephen Kuhn (Chief Kuhn), prepared and submitted a proposed reorganization, and by July the plan had been finalized. It included the following newly created positions: three Inspectors, one Chief Inspector, one Assistant Chief and one Executive Assistant Chief. Between August and November 2002, based on recommendations from Chief Kuhn, the Mayor filled several positions through promotions of persons already on the police force: David M. Howells, Jr. from Lieutenant to Chief Inspector, Ronald S. Manescu from Captain to Assistant Chief and Francis Peters from Lieutenant to Inspector. The remaining positions were filled by persons not previously members of the Police Department: Joseph C. Blackburn as Executive Assistant Chief, Barbara Hawkins as Inspector,

R. Dane Merryman as Inspector and Jose Rodriguez as Inspector. Existing members of the police force had fulfilled civil service requirements when they were first appointed; the others did not take a civil service examination or appear on a civil service eligibility list. It is undisputed that the Police Department has not imposed civil service testing for promotions.

On January 3, 2003, the FOP filed a complaint against the City seeking injunctive and declaratory relief; following a conference with the trial court on May 2, 2003 the FOP amended its complaint to add a request for relief in the form of a writ of quo warranto. The FOP did not request that the Attorney General or the District Attorney of Lehigh County pursue an action in quo warranto. The City filed preliminary objections first asserting that the FOP was barred from seeking a writ of mandamus or a declaratory judgment because of the availability of other possible remedies. The second objection was that under case law, including *In re 100 or More Electors of Clairton,* 546 Pa. 126, 683 A.2d 283 (1996), and *Bolus v. Murphy,* 823 A.2d 1075 (Pa.Cmwlth.2003), a private party must first seek to have the Attorney General's office and the District Attorney file a quo warranto action; only when both agencies decline may a private party proceed to institute a quo warranto action.

The trial court dismissed the City's preliminary objections. The court cited *100 or More Qualified Electors* for the proposition that a private person must have some special interest different from that of the public generally or have been specially damaged in order to file a quo warranto action, but the court did not address the City's contention that under *Bolus* and other cases a private party may proceed only after the Attorney General and the District Attorney refuse to do so. The

City answered the complaint; the parties conducted discovery and thereafter filed cross-motions for summary judgment on September 17, 2004. The FOP argued before the trial court that even though the City has adopted a home rule charter, Section 2962(c)(5) of the Home Rule Charter and Optional Plans Law (Home Rule Charter Law), 53 Pa.C.S. § 2962(c)(5), specifically prohibits the City from enacting any provisions inconsistent with any statute enacted before April 13, 1972 affecting the rights, benefits or working conditions of any employee of a political subdivision. The City argued that a provision in Section 4401 of The Third Class City Code, 53 P.S. § 39401, requiring civil service examinations "except as otherwise provided by law," coupled with provisions of the Home Rule Charter Law and an ordinance adopted by the City authorized the City to make the appointments at issue without going through civil service procedures.

The trial court concluded that the FOP position was correct under cases such as *Norristown Fraternal Order of Police, Lodge 31 v. DeAngelis*, 148 Pa.Cmwlth. 285, 611 A.2d 322 (1992), i.e., that civil service requirements continued to apply. The court granted the FOP's motion with respect to Hawkins, Merryman and Rodriquez and enjoined them from holding positions on the City police force until such time as they may be appointed in compliance with civil service provisions (the claim regarding Blackburn was dismissed by stipulation after he was named Chief of Police). The court granted the City's motion as to the remaining positions because no further civil service requirements applied for the promotion of persons who had satisfied requirements initially.[1]

**II**

■ On appeal the City first asserts that the trial court erred as a matter of law when it held that the FOP's quo warranto action could proceed despite the fact that the FOP failed to meet the necessary prerequisite of first seeking intervention of the Attorney General or the District Attorney. An action in the nature of quo warranto challenges the right of an individual to hold public office. *Spykerman v. Levy*, 491 Pa. 470, 421 A.2d 641 (1980). Historically, Pennsylvania courts have held that a quo warranto action is the sole and exclusive method to try title or right to public office; title may not be tested by mandamus or by any other proceeding provided by the common law. *Id.*, 491 Pa. at 484–485, 421 A.2d at 648 (citing *Mayer v. Hemphill*, 411 Pa. 1, 190 A.2d 444 (1963)). The City stresses that it has been held that a quo warranto action must be instituted by the Attorney General or the local District Attorney; only after both agencies decline to institute such an action may a private party proceed. In *Bolus* this Court stated:

> It is *when both agencies decline* that a private person may have standing but only if he or she has a special interest, or if he or she has been specially damaged as distinguished from a right or interest of the public in general. *See Mayer; Spykerman.* A private person, however, must *first* seek to have the Attorney General's Office or the local district attorney's office file a quo warranto action before he or she can proceed.

*Bolus*, 823 A.2d at 1079 (emphasis added).

The City further points out that in *100 or More Qualified Electors*, the Supreme

---

1. The Court's review of a trial court's order granting or denying summary judgment is limited to determining whether the trial court abused its discretion or committed an error of law. *Sacco v. Township of Butler,* 863 A.2d 611 (Pa.Cmwlth.2004).

Court affirmed the trial court's dismissal of the action where private plaintiffs sought removal of a member of a city council on the grounds that a former felony conviction for official misconduct rendered him unable to serve. The Attorney General declined to institute a quo warranto proceeding, and the plaintiffs then filed an action in equity without first requesting that the District Attorney institute a quo warranto proceeding. The Supreme Court noted that the plaintiffs did not have standing based on an interest different from that of other citizens of the municipality. In addition, although an alternative to a quo warranto action (such as an equity action or a mandamus action) had been approved in some cases where the Attorney General and the District Attorney declined to proceed or where a request to those officials would be futile, the plaintiffs' failure to contact the District Attorney's office and so to satisfy the criteria needed to initiate a quo warranto action at the time they filed their equity action meant that they lacked standing to pursue the matter. In the present case, the City argues, the trial court failed to distinguish or to address *Bolus* or the procedural prerequisite aspect of *100 or More Qualified Electors*.[2]

The FOP in response contends that the City's interpretation of *Bolus* is inconsistent with prior case law. In *Mayer*, in 1963, the Supreme stated that quo warranto is the sole and exclusive remedy to try right to office and added:

It is likewise part of the general rule that quo warranto can be brought only by an Attorney General, or by a District Attorney, or by a person who has a special right or interest as distinguished from the right or interest of the public generally, or has been specially damaged.

*Mayer*, 411 Pa. at 6, 190 A.2d at 446. In view of the disjunctive phrasing of the Supreme Court's statement, the FOP concludes that a request to the Attorney General and the District Attorney is not a prerequisite, and it quotes a similar statement from *Spykerman*, which was decided in 1980. The FOP argues that the discussion in *100 or More Qualified Electors* indicates that a person or entity with a special interest or who has suffered special harm has standing to proceed but that others without such a peculiar interest may proceed if the Attorney General and the District Attorney refuse to do so. The FOP argues that the discussion in *Bolus* does not indicate an intention to change existing case law. It asserts that it has a special interest in this matter distinguishable from that of the general public because the Inspector positions represent promotional opportunities for members of the FOP as certified members of the City police force.

■ The Court agrees that the City's interpretation of *Bolus* and the cases on which it relied is correct and that this rule determines the outcome here. In *Bolus*

2. The City also contends that dismissal of the amended complaint in its entirety is appropriate because the FOP's other claims for relief, i.e., the counts in declaratory judgment and mandamus, are simply derivative of the quo warranto action. As the City notes, the court approved an equitable challenge to a borough mayor's right to serve where the Attorney General and the District Attorney refused to institute a quo warranto proceeding in *Andrezjwski v. Borough of Millvale*, 543 Pa. 539,

673 A.2d 879 (1996), and an equitable challenge to an appointed commissioner under the same circumstances in *League of Women Voters of Lower Merion and Narberth v. Board of Commissioners of Lower Merion Township*, 451 Pa. 26, 301 A.2d 797 (1973). The Court agrees that quo warranto is the correct form of action and that validity of the entire complaint turns on whether quo warranto has been properly brought.

the Court referred to a frequently quoted explanation of the reason for the procedural remedy of quo warranto:

Quo warranto is the Gibraltar of stability in government tenure. Once a person is duly elected or duly appointed to public office, the continuity of his services may not be interrupted and the uniform working of the government machinery disorganized or disturbed by any proceeding less than a formal challenge to the office by that action which is [now] venerable with age, reinforced by countless precedent, and proved to be protective of all parties involved in a given controversy, namely *quo warranto*.

*Bolus*, 823 A.2d at 1079 (quoting *Carroll Township School Board Vacancy Case*, 407 Pa. 156, 157–158, 180 A.2d 16, 17 (1962)). The Supreme Court has been fairly liberal in allowing actions styled other than quo warranto actions to proceed after requests have been made to the Attorney General and to the local District Attorney to file a quo warranto and both of those agencies have declined. *See League of Women Voters of Lower Merion and Narberth v. Board of Commissioners of Lower Merion Township*, 451 Pa. 26, 301 A.2d 797 (1973) (refusal of Attorney General and District Attorney to pursue quo warranto action conferred standing on plaintiffs to proceed in equity); *Andrezjwski v. Borough of Millvale*, 543 Pa. 539, 673 A.2d 879 (1996) (same). These decisions, however, honor the procedural prerequisite of requesting quo warranto proceedings by the proper officials before filing a private action.[3]

The FOP failed to satisfy the necessary prerequisite of first seeking intervention by the proper officials before proceeding with the FOP's own action in declaratory judgment, mandamus and quo warranto. Under *Bolus* and its antecedents, the FOP's failure to make such a request requires that the amended complaint be dismissed. Accordingly, because the trial court erred in failing to dismiss the FOP's amended complaint, this Court must reverse the trial court's order and dismiss the amended complaint.

### ORDER

AND NOW, this 10th day of March, 2006, the Court reverses the order of the Court of Common Pleas of Lehigh County and dismisses the amended complaint filed by the Fraternal Order of Police.

---

**3.** A recognized exception to the standard procedure exists where it would be a futile exercise to seek approval from the proper officials. In *100 or More Qualified Electors* the Supreme Court cited as an example *Commonwealth ex rel. Specter v. Martin*, 426 Pa. 102, 232 A.2d 729 (1967), holding that a mandamus action was appropriate where the Attorney General approved a District Attorney's candidacy for Mayor, and it was inconceivable that the District Attorney would institute an action against himself in quo warranto. There is no suggestion at all in the present case that requesting the proper officials to proceed would have been futile.