995 A.2d 1137

**The Honorable Stephen R. REED and Fred Clark, Appellees**

v.

**The HARRISBURG CITY COUNCIL, Susan Brown Wilson, Patty Kim, Daniel C. Miller, Gloria Martin–Roberts and Linda Thompson, Erica Bryce, James E. Ellison and Eric Papenfuse, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 2009.

Decided May 26, 2010.

Royce Leon Morris, Steven Edward Grubb, Ronald M. Katzman, Goldberg Katzman, P.C., Harrisburg, for HBG City

Council; Wilson, Kim, Miller, Martin–Roberts, Thompson, Bryce, Ellison, Papenfuse.

Bruce D. Foreman, Foreman, Foreman & Caraciolo, P.C., Harrisburg, for Fred Clark.

Thomas A. Leonard, Louis B. Kupperman, Philadelphia, Kevin Joseph Kehner, Harrisburg, Zachary Scott Davis, Mathieu Jode Shapiro, Obermayer Rebmann Maxwell & Hippel, L.L.P., Robert William Hayes, Sandra Schultz Newman, Cozen O'Connor, Philadelphia, for Mayor Stephen Reed & Fred Clark.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice EAKIN.

The Harrisburg City Council, seeking control of the Harrisburg Authority, enacted Bill Number 36 of 2006, an ordinance giving it sole power to appoint members to the Harrisburg Authority's Board. Previously, Harrisburg's mayor, with City Council's advice and consent, appointed Board members to the Authority. Appellee Reed, then-mayor of Harrisburg,[1] vetoed the ordinance. Council overrode the veto, and on the same day purported to appoint three people to the five-member Authority Board.

Appellees sued, seeking immediate injunctive, declaratory, and *quo warranto* relief. Extensive, circuitous litigation regarding the preliminary injunction ensued. *See Reed v. Harrisburg City Council,* 927 A.2d 698, 706 (Pa.Cmwlth.2007) (*en banc*) (appellees not entitled to injunction because they failed to show likelihood of irreparable harm). Meanwhile, the trial court held argument regarding the declaratory judgment and *quo warranto* actions. The trial court distinguished this case

---

1. Mayor Reed left office in January, 2010; no party has argued this affects this matter, and we will not consider the impact of the end of his mayoralty further. *See Rendell v. Pennsylvania State Ethics Commission,* 603 Pa. 292, 983 A.2d 708, 717–18 (2009) (case-or-controversy issues are not raised by court *sua sponte*).

from *City Council of City of Hazleton v. City of Hazleton*, 134 Pa.Cmwlth. 174, 578 A.2d 580 (1990), *affirmed by an equally divided court*, 528 Pa. 604, 600 A.2d 191 (1992), which held the Hazleton City Council had the authority to appoint municipal authority boardmembers. The trial court noted Hazleton has an optional Plan B form of government, while Harrisburg's mayor-council Plan A form of government gives the mayor substantially more power. Interpreting the Optional Third Class City Charter Law, 53 P.S. §§ 41101–45000, the trial court found the term governing personnel to include both the mayor and the city council. Trial Court Opinion, 1/10/08, at 8–9 (quoting 53 P.S. § 41402). The trial court concluded Harrisburg's pre-ordinance method of appointment was the appropriate method under the Municipal Authorities Act (MAA), 53 Pa.C.S. §§ 5601–23; it declared the ordinance void, and separately held Council's appointees to the Board "are without warrant to hold membership on the [B]oard of the Harrisburg Authority." Trial Court Opinion, 1/10/08, at 12.

■ Appellants appealed to the Commonwealth Court. Appellees objected on jurisdictional grounds and moved to transfer the matter to this Court. In a single-judge order, the Commonwealth Court transferred the case to this Court, noting 42 Pa.C.S. § 722(2) grants this Court exclusive appellate jurisdiction over final orders involving the right to public office.[2] However, before reaching this case's underlying merits, we must determine if appellees have standing to bring this *quo warranto* action. "As this is a purely legal question, our standard of review is *de novo* and scope of review is plenary." *In re Milton Hershey School*, 590 Pa. 35, 911 A.2d 1258, 1261 (2006).

■ The parties do not dispute that municipal authority boardmembers are subject to *quo warranto* actions. General-

2. The Commonwealth Court properly found this Court has exclusive appellate jurisdiction over cases regarding the right to public office. *See Rastall v. DeBouse*, 736 A.2d 756, 759 (Pa.Cmwlth.1999) (this Court has exclusive jurisdiction over appeals concerning right to public office). However, because the Commonwealth Court does not have authority to transfer cases to this Court, we treat appellees' motion to transfer as a notice of appeal.

ly, a *quo warranto* action is the exclusive means of challenging the title or right to public office, and only the Attorney General or local district attorney may institute a *quo warranto* action. *In re One Hundred or More Qualified Electors of the Municipality of Clairton,* 546 Pa. 126, 683 A.2d 283, 286 (1996).

> [A] private person, with no special right or interest in the public office, must first seek to have either the Attorney General or local district attorney file a *quo warranto* action. It is only after *both* the Attorney General and the local district attorney decline to bring such an action that a private person will have standing to seek the removal of the holder of a public office. . . .

*Id.,* at 287 n. 10 (emphasis in original). "A party will be permitted to bring an alternative action to the remedy of *quo warranto* where the Attorney General and the local district attorney refuse to bring such an action or if it would be a futile exercise to seek the approval of these officials." *Id.,* at 286–87.

Appellants contend appellees lack standing to bring a *quo warranto* action because they filed this action without first asking both the Attorney General and the local district attorney to bring the action. Appellants rely upon recent Commonwealth Court holdings, which state " '[i]t is *when both agencies decline* that a private person may have standing but only if he or she has a special interest, or if he or she has been specially damaged as distinguished from a right or interest of the public in general.' " *Fraternal Order of Police, Queen City Lodge No. 10 v. City of Allentown,* 894 A.2d 224, 227 (Pa. Cmwlth.2006) (emphasis in original) (quoting *Bolus v. Murphy,* 823 A.2d 1075, 1079 (Pa.Cmwlth.2003)).[3]

---

**3.** Appellants also argue the trial court improperly decided this case as a declaratory judgment action when a *quo warranto* proceeding was the only proper approach. This argument fails; although the trial court opinion summarily discussed the *quo warranto* claim, its order clearly stated the Board members "appointed by Council ... are *without warrant* to hold membership on the [B]oard of the Harrisburg Authority." Trial Court Opinion, 1/10/08, at 12 (emphasis added). The trial court declared the ordinance void in a separate count of its order.

Appellees argue, as then-mayor of Harrisburg and as the mayor's appointee to the Authority's Board, they are public officials and "may pursue actions in *quo warranto* without first consulting either the attorney general or the district attorney." Appellees' Brief, at 23. Appellees claim Mayor Reed had an interest in protecting his purported power to appoint Board members to the Authority. Appellee Clark, a Board member who lost his position to a Council-appointed purported member, also claims an interest in protecting Mayor Reed's appointment power.

Appellants claim appellees should have notified the Attorney General and Dauphin County District Attorney before bringing this *quo warranto* action. A private party with a special interest in the matter, or who has been specially damaged, may institute a *quo warranto* action. *See, e.g., In re One Hundred or More Qualified Electors of the Municipality of Clairton,* at 286 ("A private person will have standing to bring a *quo warranto* action only if that person has a special right or interest in the matter, as distinguished from the right or interest of the public generally, or if the private person has been specially damaged."); *Zemprelli v. Daniels,* 496 Pa. 247, 436 A.2d 1165, 1167 (1981) (Attorney General, district attorney, or private party with special interest may bring *quo warranto* action).

■ We have never required a private party with a special interest to notify the Attorney General and local district attorney before filing a *quo warranto* action. Consistent with our long-standing precedent, we hold a private party with a special interest in the matter may institute a *quo warranto* action without first notifying the Attorney General or the local district attorney. We disapprove of the Commonwealth Court's holdings in *Fraternal Order of Police, Queen City Lodge No. 10* and *Bolus* insofar as they are inconsistent with our holding.

Therefore, the court effectively decided the declaratory judgment and *quo warranto* claims, properly deciding the entitlement of city council appointees to their Board seats through a *quo warranto* action.

■ Our decision today is not carte blanche for anyone adversely affected by a public official's decision to bring a *quo warranto* claim against that public official. A private person " 'must show in himself an interest in the controversy.... He must possess some peculiar, personal interest aside from his general interest as a member of the public.' " *Stroup v. Kapleau,* 455 Pa. 171, 313 A.2d 237, 238–39 (1973) (quoting *Commonwealth ex rel. Schermer v. Franek,* 311 Pa. 341, 166 A. 878, 879 (1933)). Mayor Reed had a strong interest in defending his authority to appoint members to the Board, and Clark was an incumbent Board member, who had an interest in retaining his position by protecting the power of his appointer, Mayor Reed, to reappoint him to the Board. Therefore, both appellees have a special interest in the ordinance's validity. Thus, they are entitled to bring this *quo warranto* action challenging the right of Council's purported appointees to sit as Board members.

The crux of this dispute is whether the term "governing body" in 53 Pa.C.S. § 5610(a)(1) includes the mayor of a third class city governed under the mayor-council Plan A form. This statutory interpretation matter is a purely legal question; thus, "our standard of review is *de novo* and scope of review is plenary." *In re Milton Hershey School,* at 1261. In statutory interpretation, the General Assembly's intent is paramount. 1 Pa.C.S. § 1921(a). When a statute is unambiguous, the plain meaning of the statute shall control. *Id.,* § 1921(b).

Appellants argue the term "governing body" encompasses only Council and does not include the mayor. Disputing the trial court's reliance on the provision of "governing personnel," *see* 53 P.S. § 41402, appellants claim the provision is only " 'a mere recitation of municipal offices.' " Appellants' Brief, at 21–22 (quoting *City Council of City of Bethlehem v. Marcincin,* 512 Pa. 1, 515 A.2d 1320, 1325 (1986)). Appellants observe the General Assembly consistently defined "governing body" as "city council" in various other statutes, and "when it desires a mayor to hold appointment power, specifically so designates." *Id.,* at 15, 17, 515 A.2d 1320; *see, e.g.,* 53 Pa.C.S. § 732 (Municipal Consolidation or Merger Act); *id.,* § 902 (Munici-

pal Reapportionment Act); *id.,* § 2902 (Home Rule Charter and Optional Plans Law); *id.,* § 8422 (Local Taxpayers Bill of Rights Act); 53 P.S. § 10107 (Pennsylvania Municipalities Planning Code). Furthermore, when authorizing direct appointment by a mayor, the General Assembly does so explicitly. *See, e.g.,* 35 P.S. § 1545(b) (mayor appoints members of housing authorities with advice and consent of city council); *id.,* § 1705 (mayor appoints board members for redevelopment authorities); 53 Pa.C.S. § 5508(b)(2) (mayor appoints parking authorities).

Appellees argue the trial court correctly determined Mayor Reed was part of the "governing body" under the MAA and thus entitled to appoint the Authority's Board members with Council's advice and consent. Appellees observe appointment is a traditionally executive function, and the General Assembly customarily grants appointment power to the mayor. Appellees argue the General Assembly has not defined "governing body" in either the MAA or the Third Class City Law, and contend the General Assembly intended "each municipality's organic law to identify the governing body." Appellees' Brief, at 18. To support the claim that Harrisburg's organic law included its mayor in its governing body, appellees detail the history of Harrisburg's charter, which envisioned a strong mayor, and outline the history of the mayor's appointment power.

■ As appellants' research demonstrates, when the General Assembly vests appointment authority in either a city council or a mayor, it does so expressly. Neither the MAA nor the Third Class City law [4] defines "governing body."

4. In *Hazleton,* a divided Commonwealth Court panel ruled Hazleton's mayor-council Plan B meant city council was the "governing body" for MAA purposes. *Hazleton,* at 583–84. The court relied, in part, upon the Optional Plans Law's definition of "governing body," which included city councils. *Id.,* at 582–83 (citing 53 P.S. § 1–102, *repealed* December 19, 1996, P.L. 1158, No. 117 § 2(a)). On appeal, this Court was equally divided and affirmed by *per curiam* order. *See Hazleton,* 528 Pa. 604, 600 A.2d 191, 192 (1992). However, Hazleton was an Optional Plan B, pursuant to the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. §§ 2901–3171, whereas Harrisburg is governed by the Optional Third Class City Charter Law. Further, the General

However, "governing body" has been defined as "government" or "a group of (esp[ecially] corporate) officers or persons having ultimate control...." Black's Law Dictionary 715 (8th ed. 2004).

■ We find the Mayor of Harrisburg—a third class city operating under the mayor-council Plan A form—is part of Harrisburg's government and one of the officers with ultimate control. The mayor is listed amongst the governing municipal officers. 53 P.S. § 41402; *see also Marcincin*, at 1325 (§ 41402 is a "mere recitation of municipal offices"). Plan A further vests "executive power of the city" in the mayor. 53 P.S. § 41411. Further, the mayor, with Council's advice and consent, appoints the heads of city departments and is permitted to remove department heads with notice to Council. *Id.*, § 41415(c). Plan A thus establishes the mayor as a governing municipal officer and vests the city's executive power in him. The mayor is one of the "officers or persons having ultimate control" in a city operating pursuant to the mayor-council Plan A form. Black's Law Dictionary 715 (8th ed. 2004). As the mayor is part of Harrisburg's governing body, the mayor is entitled to appoint members of the Board, with the advice and consent of Council.

■ Because Council enacted the ordinance here pursuant to Harrisburg's mayor-council Plan A as chosen by the Harrisburg electorate, pursuant to the Optional Third Class City Charter, appellants contend it is presumptively valid pursuant to the broad powers granted mayor-council Plan A municipalities. It is well-settled "[w]here an ordinance conflicts with a statute, the will of the municipality as expressed through an ordinance will be respected unless the conflict between the statute and the ordinance is irreconcilable." *Marcincin*, at 1326. Here, the MAA—a statute—already provides that Harrisburg's "governing body" appoints members of the Harrisburg Authority's Board. We have already determined the

Assembly has since limited the application of the definitional section relied upon by the *Hazleton* court to municipal charter commissions. Therefore, the statutory definition the *Hazleton* court relied upon is no longer applicable.

mayor is part of Harrisburg's governing body. The mayor, as executive, has appointment power. The Council attempted to assume this appointment power without holding a referendum to amend Harrisburg's mayor-council Plan A form of government. Council may not contravene the Optional Third Class City Charter Law selected by Harrisburg's electorate and substitute its own definition of "governing body." Otherwise, there would be few mayoral powers which Council could not usurp by ordinance. As the ordinance is irreconcilable with the Optional Third Class City Charter Law, it is void.

Because the ordinance is void, Council's purported appointments made pursuant to the ordinance are likewise void, and Council's appointees are not entitled to hold seats on the Board of the Harrisburg Authority.

The trial court's order is affirmed.

Jurisdiction relinquished.

Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices SAYLOR, BAER, TODD and McCAFFERY join the opinion.