**CAPITAL CITY LODGE NO. 12, FRATERNAL ORDER OF POLICE, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 29, 2011.

Decided Nov. 1, 2011.

Sean T. Welby, Harrisburg, for petitioner.

John B. Neurohr and Warren R. Mowery, Jr., Harrisburg, for respondent.

Jason M. Hess, Acting City Solicitor, Harrisburg, for intervenor City of Harrisburg.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Capital City Lodge No. 12, Fraternal Order of Police (FOP) petitions for review of the order of the Pennsylvania Labor Relations Board (Board) that dismissed FOP's exceptions and made absolute and final the hearing examiner's proposed decision and order dismissing FOP's unfair labor practice charges against the City of Harrisburg (City). FOP argues that the City Council's failure to adopt an ordinance to implement a modification of the City police officers' pension plan, as agreed to by the City Mayor and FOP, constitutes unfair labor practices under Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a) and (e), under which it is an unfair labor practice for an employer "[t]o interfere with, restrain or coerce employes in the exercise of the rights guaranteed in [the Act]" or "[t]o refuse to bargain collectively with the representatives of his employes." Because FOP's argument is not supported by the provisions of the applicable statutes, the Board's order is affirmed.

FOP is the exclusive representative of the collective bargaining unit consisting of the City police officers. Section 1 of the Act of June 24, 1968, P.L. 237, commonly known as Act 111, *as amended*, 43 P.S. § 217.1, grants policemen or firemen employed by the Commonwealth or its political subdivisions a right to bargain collectively with their public employers "concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits." In the fall of 2008, the City's former mayor, Stephen R. Reed, and FOP negotiated terms of a new collective bargaining agreement pursuant to the reopener clause in the 2004–2010 collective bargaining agreement. The negotiations resulted in an agreement to extend the 2004–2010 collective bargaining agreement through December 31, 2015 and to increase the police officers' salaries and pension benefits. Mayor Reed, the City's controller and solicitor, and the FOP president signed the agreement (contract extension agreement) in November 2008.[1]

In January 2009, the City's business administrator, Robert Kroboth, asked the City's consulting actuary, David Killick, to complete an actuarial study of the proposed change to the police pension plan, as required by Section 305 of the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, *as amended*, 53 P.S. § 895.305. Section 305(a) and (e) of that act provides:

(a) **Presentation of cost estimate.**— Prior to the adoption of any benefit plan modification *by the governing body of the municipality,* the chief administrative officer of each pension plan shall provide to the governing body of the municipality a cost estimate of the effect of the proposed benefit plan modification.

. . . .

(e) **Contents of cost estimate.**—Any cost estimate of the effect of the pro-

---

1. Mayor Reed was a member of the City police pension board at the time. His pension benefits are covered under the police pension plan.

posed benefit plan modification shall be complete and accurate and shall be presented in a way reasonably calculated to disclose to the average person comprising the membership of the governing body of the municipality, the impact of the proposed benefit plan, the modification on the future financial requirements of the pension plan and the future minimum obligation of the municipality with respect to the pension plan. [Emphasis added.]

Section 2–707.65 of the City's Pension Ordinance also requires the pension board to provide the City with a cost estimate of a proposed benefit plan modification. In an actuarial study submitted to Kroboth on January 29, 2009, Killick estimated that the proposed pension plan modification would cost the City an additional $514,000 in annual pension funding.

On March 9, 2009, Kroboth signed the contract extension agreement in his capacity as the City's business administrator. Mayor Reed and FOP then agreed to delay submission of a proposed City Pension Ordinance amendment to the City Council until the summer of 2009. On June 5, 2009, Kroboth submitted a draft amendment to the Pension Ordinance to the public safety committee of the City Council and requested that the City Council act on the draft by June 23. The proposed amendment did not make it out of the committee. The City implemented all other terms in the contract extension agreement.

On July 31, 2009, FOP filed an unfair labor practice charge complaint against the City, alleging that the City's failure to implement the modification to the police pension plan in the contract extension agreement constituted unfair labor practices under Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act. FOP averred that the City Council was bound by the contract extension agreement and was required to adopt an ordinance to implement that agreement. The City responded that City Council has exclusive control over pension funding and is not bound by the provisions of the collective bargaining agreement requiring a legislative action. The evidence presented at a hearing before the hearing examiner showed that FOP had collectively bargained with the Mayor, not with City Council, in the past, and that on two occasions, City Council passed an ordinance implementing the changes to the police pension plan in the collective bargaining agreements.

In a proposed decision and order, the hearing examiner determined that the City's pension fund is under the direction and control of the City Council and that the Mayor lacks power to bind the City to financial obligations. The hearing examiner noted that the contract extension agreement between the Mayor and FOP was only a tentative agreement and that "a mayoral attempt to negotiate a contract containing police pension modifications, while expecting City Council to simply rubber stamp the concomitant financial obligations, would arguably constitute an *ultra vires* act." Proposed Decision and Order at 6. Concluding that the City Council's refusal to pass an ordinance to modify the police pension plan did not constitute an unfair labor practice, the hearing examiner dismissed FOP's complaint. In its final order, the Board dismissed FOP's exceptions and made the hearing examiner's proposed decision and order absolute and final. FOP appealed the Board's final order, and the City intervened in the appeal.

The City is a third class city established under The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701. The City adopted a "mayor-council plan A" form of govern-

ment under Section 401 of the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. § 41401. Under such form of government, the executive power is exercised by the city mayor, and the legislative power is exercised by the city council "except as may be otherwise provided by general law." Sections 407 and 411 of the Optional Third Class City Charter Law, 53 P.S. §§ 41407 and 41411.

■■■ Section 1901(a) of The Third Class City Code, 53 P.S. § 36901(a), provides that "[t]he [city] council shall, by ordinance, provide for and regulate the award of all contracts." Consequently, the third class city's power to enter into contracts fixing terms and conditions of employment is vested in the city council. *City of McKeesport Wage & Policy Comm. v. City of McKeesport,* 31 PPER ¶ 31130 (Final Order, 2000).[2] Section 4301 of The Third Class City Code, 53 P.S. § 39301, provides in relevant part:

> Cities shall establish, by ordinance, a police pension fund, ... which fund shall at all times be *under the direction and control of [city] council* but may be committed to *the custody and management of such officers of the city* or citizens thereof, or corporations located therein, as may be designated by council, and applied, under such regulations as council may, by ordinance, prescribe, for the benefit of such members of the police force.... [Emphasis added.]

■■ FOP argues that the City Council divested itself of any involvement in the collective bargaining process in Section 2–307.5 of the City Ordinance, which provides:

> Contract *administration* for the City, heretofore vested in Council, shall be vested in the Mayor and Department of Administration, to be exercised in accordance with the procedures adopted by the Mayor. The exception shall be the award of no-bid contracts for professional services. Due to the sensitive and controversial nature of these contacts, coordination with and approval by the City Council is required. [Emphasis added.]

According to FOP, Section 2–307.5 of the City Ordinance delegated "a role of [the] lawmaking body" to the Mayor and his administration, and the City Council's role was "to effectuate the ministerial act of passage of the appropriate ordinance to implement the [collective bargaining] agreement." FOP's Brief at 12–13. FOP maintains that the City Council's failure to carry out such duty constitutes unfair labor practices.[3]

■■ Section 413(c) of the Optional Third Class City Charter Law, 53 P.S. § 41413(c), provides that "[a]ll bonds, notes, contracts and written obligations of the city shall be *executed* on its behalf by the mayor and the controller." (Emphasis added.) The term "execute" in Section 413(c) means "to discharge the ministerial duties relating to a contract." *Symon v. Tomljanovic,* 71 Pa.Cmwlth. 205, 454 A.2d 234, 235 (1983). In *Moore v. Reed,* 126 Pa.Cmwlth. 283, 559 A.2d 602 (1989), this Court agreed with the City Council that the Mayor had no authority to negotiate

---

**2.** Although the Board's prior decisions are not binding, this Court may consider and rely on those decisions if they are persuasive. *Gateway Sch. Dist. v. Pa. Labor Relations Bd.,* 79 Pa.Cmwlth. 506, 470 A.2d 185 (1984).

**3.** Where, as here, the dispute involves a purely legal question, our review of the Board's

order is plenary. *Reed v. Harrisburg City Council,* 606 Pa. 117, 995 A.2d 1137 (2010). As an agency responsible for implementing and enforcing labor relations statutes, the Board's interpretation of those statutes is entitled to substantial deference. *Office of Admin. v. Pa. Labor Relations Bd.,* 591 Pa. 176, 916 A.2d 541 (2007).

contracts imposing financial burdens and obligations on the City without approval of the City Council. The Court stated: "The authority to negotiate a valid and binding contract for a municipality is vested in the City Council. It is a legislative function. Without the assent of City Council, the municipality is not bound. . . ." *Id.* at 603 (citation omitted).

As the Pennsylvania Supreme Court observed in *Commonwealth v. Mockaitis*, 575 Pa. 5, 24, 834 A.2d 488, 499 (2003), "[o]ne of the distinct and enduring qualities of our system of government is its foundation upon separated powers." The principle of separation of powers prohibits any branch of the government from exercising the functions exclusively committed to another branch. *Jubelirer v. Rendell*, 598 Pa. 16, 953 A.2d 514 (2008). FOP's assertion that the City Council delegated its legislative functions over police pension funding to the Mayor not only ignores the principle of separation of powers but also directly contravenes Section 4301 of The Third Class City Code requiring that the police pension fund be under the direction and control of the City Council, and Section 2–307.5 of the City Ordinance vesting only the "contract administration" function, not the legislative functions, in the City officers. Section 2–307.5 of the City Ordinance, as interpreted by FOP, would be void because it cannot be reconciled with Section 4301 of The Third Class City Code permitting only the delegation of "the custody and management" of the pension fund to the city officers. *Reed v. Harrisburg City Council*, 606 Pa. 117, 995 A.2d 1137 (2010).

Rather, the contract extension agreement between Mayor Reed and FOP modifying the pension plan must be characterized as a tentative agreement subject to approval by the City Council. *See City of Scranton v. Local Union No. 669 of the Int'l Ass'n of Fire Fighters*, 122 Pa.

Cmwlth. 140, 551 A.2d 643, 645 (1988) (describing the agreement between the city and the union, which was subsequently rejected by the city council, as "a tentative agreement"). The City Council was not bound by the tentative agreement requiring the City Council's legislative action for its implementation.

Section 4(a) of Act 111, 43 P.S. § 217.4(a), provides in relevant part:

> [I]f the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute . . . may request the appointment of a board of arbitration.
>
> . . . .
>
> In the case of disputes involving political subdivisions of the Commonwealth, the agreement shall be *deemed not approved within the meaning of this section if it is not approved by the appropriate lawmaking body within one month after the agreement is reached by way of collective bargaining.* [Emphasis added.]

Because the City Council refused to implement the police pension plan modification, it is deemed not approved. The City Council's failure to approve the tentative agreement between the Mayor and FOP cannot constitute an unfair labor practice.

Accordingly, the final order of the Board is affirmed.

### ORDER

AND NOW, this 1st day of November, 2011, the final order of the Pennsylvania Labor Relations Board in the above-captioned matter is AFFIRMED.