# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania : 
ex rel. Andy J. Watson, District : 
Attorney : 
 : 
        v. :   No. 605 C.D. 2022
 :   Argued: April 3, 2023
Kaitlyn Nicole Crosby, : 
             Appellant : 

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
               **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
               **HONORABLE STACY WALLACE,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER     FILED: July 18, 2023**

Kaitlyn Nicole Crosby (Crosby) appeals from the Order of the Court of Common Pleas of Potter County (common pleas) entered June 3, 2022, granting judgment on the pleadings on the Complaint in *Quo Warranto* (Complaint) filed by the Commonwealth of Pennsylvania (Commonwealth) by and through Andy J. Watson, District Attorney. Common pleas found Crosby ineligible to sit as Mayor of the Borough of Austin, Pennsylvania, due to her felony conviction for aggravated assault by vehicle. By Order dated August 10, 2022, this Court directed the parties to address in their principal briefs on the merits whether this Court has appellate jurisdiction over Crosby's appeal. Upon consideration of those jurisdictional arguments and the fact that the Commonwealth did not timely object to this Court's jurisdiction pursuant to Pennsylvania Rule of Appellate Procedure 741, Pa.R.A.P. 741 (Rule 741), the Court concludes it has jurisdiction over Crosby's appeal. This is not a "prequalification action" challenging Crosby's eligibility to run for office,

but a removal action, a jurisdictional distinction recognized by our Supreme Court in *Commonwealth v. Spano*, 701 A.2d 566, 567-68 (Pa. 1997). Therefore, we will consider the merits of this appeal and, based on settled precedent, we are constrained to conclude common pleas committed no error or abuse of discretion in granting judgment on the pleadings.

## I. BACKGROUND

### A. *The Complaint and Motion*

On July 7, 2021, Crosby pled guilty to: involuntary manslaughter, a first-degree misdemeanor[1] (Count 1); aggravated assault by vehicle, a third-degree felony[2] (Count 2); and careless driving, a summary offense[3] (Count 3), in the Court

---

[1] Section 2504(a) of the Crimes Code provides: "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S. § 2504(a). "Involuntary manslaughter is a misdemeanor of the first degree," 18 Pa.C.S. § 2504(b), for which an individual may be sentenced up to five years' confinement, Section 1104 of the Crimes Code, 18 Pa.C.S. § 1104.

[2] Section 3732.1(a) of the Vehicle Code makes it a third-degree felony offense for a

> person [to] recklessly or with gross negligence cause[] serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic exception [S]ection 3802[, 75 Pa.C.S. § 3802,] (relating to driving under the influence of alcohol or a controlled substance).

75 Pa.C.S. § 3732.1(a). Generally, a third-degree felony may result in a sentence of up to seven years of confinement. Section 1103 of the Crimes Code, 18 Pa.C.S. § 1103. Section 3732.1(b) of the Vehicle Code authorizes a sentencing enhancement of an additional two years of confinement under certain circumstances, making it possible for a sentence for a conviction of this third-degree felony to be increased to nine years. 75 Pa.C.S. § 3732.1(b).

[3] Section 3714(a), (b) of the Vehicle Code states that a "person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense" and shall be sentenced to pay a $500 fine if the person "unintentionally causes the death of another person as a result of the violation." 75 Pa.C.S. § 3714(a), (b). At most, a person
**(Footnote continued on next page…)**

2

of Common Pleas of the 59th Judicial District, Cameron County Branch (Cameron County court). (Common pleas opinion (op.) at 1.) On the same date, the Cameron County court sentenced Crosby to 11½ months to 2 years, minus 1 day of incarceration on Count 1, 36 months' probation on Count 2 to run concurrently with the Count 1 sentence, and a fine on Count 3. The convictions arose out of Crosby's operation of a motor vehicle that struck and killed a pedestrian.

On November 2, 2021, Crosby was elected Mayor. Those election results were certified on November 15, 2021, and Crosby was sworn into office on January 3, 2022. The Commonwealth filed the Complaint on January 25, 2022, seeking Crosby's removal from office based on her felony conviction. (Reproduced Record (R.R) at A-10–A-21.[4]) The Commonwealth alleged the felony was an infamous crime making Crosby ineligible for office pursuant to article II, section 7 of the Pennsylvania Constitution.[5]

Crosby filed an Answer and New Matter, admitting she pled guilty to and was convicted of the crimes on July 7, 2021, as averred in the Complaint, but noting the underlying events took place several years before the plea, she had completed her sentence, and the voters were aware of those convictions. (*Id.* at A-22–A-27.) Crosby disputed that aggravated assault by vehicle was an infamous crime, as it did not involve an element of deceit, theft, embezzlement, or any *crimen falsi*, nor did it

---

convicted of a summary offense may be sentenced to 90 days of confinement. Section 1105 of the Crimes Code, 18 Pa.C.S. § 1105.

[4] The Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a"). For ease, the Court will utilize the method used in the Reproduced Record.

[5] Article II, section 7 provides that "No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth." PA. CONST. art. II, § 7.

3

involve misrepresentation or misconduct in office. (*Id.* at A-23, A-25–A-26.) Crosby further asserted that, although there were cases holding that felonies are infamous crimes, those cases involved felonies that were "crimes of deceit, trespass or misrepresentation for dishonesty [sic]." (*Id.* at A-23.) The Commonwealth filed an Answer to the New Matter, denying Crosby's assertions. (Original Record at Item 6.)

The Commonwealth filed a Motion for Judgment on the Pleadings (Motion), asserting judgment should be entered in its favor because Crosby admitted to being convicted of a felony, which is an infamous crime under article II, section 7 and precedent, even if it did not involve *crimen falsi*. (R.R. at A-32–A-34.) Crosby responded to the Motion, reiterating that not all felonies are infamous crimes and, under her reading of article II, section 7, *Commonwealth ex rel. Kearney v. Rambler*, 32 A.3d 658 (Pa. 2011) (*Rambler II*), *Commonwealth ex rel. Corbett v. Griffin*, 946 A.2d 668 (Pa. 2008), and *Bracey v. Helfrich* (C.C.P. York, No. 2011-SU-5007-47, filed August 1, 2012), the particular circumstances of each felony must be considered at a hearing, and, therefore, the Motion should be denied. (*Id.* at A-36–A-41, A-56–A-91.)

## B. Proceedings Before Common Pleas

At oral argument,[6] the Commonwealth argued precedent, including *Commonwealth v. Richard*, 751 A.2d 647 (Pa. 2000), *Griffin*, *In re Petition of Hughes*, 532 A.2d 298 (Pa. 1987), *Commonwealth v. Shaver*, 3 Watts & Serg. 338 (Pa. 1842), and *Bolus v. Fisher*, 785 A.2d 174 (Pa. Cmwlth. 2001) (*Bolus I*), *aff'd per curiam* 798 A.2d 1277 (Pa. 2002), supported the position that all felonies

---

[6] The transcript of the oral argument is found at pages A-122–A-132 of the Reproduced Record.

4

constitute infamous crimes for purposes of article II, section 7, and *Rambler II* did not preclude judgment on the pleadings. Crosby asserted *Rambler II* and changes in what constitutes a felony since *Shaver* have created the possibility that not all felonies constitute infamous crimes and, under *Rambler II*'s rationale, the totality of the circumstances related to the specific nature of the felony should be reviewed to determine if it was disqualifying, which requires a hearing.

Common pleas granted the Motion and entered judgment in favor of the Commonwealth, reasoning the Commonwealth had established there were no disputed issues of fact because Crosby admitted to being convicted of a felony, which was disqualifying, and the Commonwealth was entitled to judgment as a matter of law. Citing *Richard*, 751 A.2d at 653, and *Bolus I*, 785 A.2d at 178, common pleas held, respectively, that an infamous crime for purposes of article II, section 7 is a felony, a *crimen falsi* crime, or a like offense involving a charge of falsehood affecting the public administration of justice, and "[a] candidate who has been convicted of either a felony, or a *crimen falsi* crime, is ineligible to hold elected office in the Commonwealth." (Common pleas op. at 4.) Common pleas rejected Crosby's assertion that *Rambler II* reflected an evolution in the law on which criminal conviction constituted a disqualifying infamous crime. According to common pleas, *Rambler II* involved a felony conviction for "mailing threatening communication" under federal law, not a felony conviction under the Pennsylvania law, and the Supreme Court examined whether the extra-jurisdictional felony conviction would be disqualifying. Common pleas observed the Supreme Court reversed the Superior Court's determination that it was not disqualifying (as the sentence was more akin to a misdemeanor under Pennsylvania law) because when the character of the extra-jurisdictional felony conviction was reviewed, the offense

"was 'inconsistent with commonly accepted principles of honesty and decency'" and, therefore, an infamous crime. (Common pleas op. at 5 (quoting *Rambler II*, 32 A.3d at 667).) The issue in *Rambler II*, common pleas concluded, was not the issue in this matter.

Common pleas disagreed with Crosby that, to be disqualifying, "a felony must also be a crime of *crimen falsi*," finding no support for this position in *Rambler II* or any other precedent, and *Bolus I* supported the opposite conclusion. (*Id.* at 7.) *Rambler II*, common pleas held, likewise supported the opposite conclusion, by citing *Griffin* and *Richard* for the proposition that felony disqualification and *crimen falsi* disqualification were distinct categories. (*Id.* at 7-8 (citing *Rambler II*, 32 A.3d at 661-62).) Last, common pleas found *Bracey*, a non-precedential opinion, unpersuasive. Therein, the trial court found that a state felony drug conviction was not a disqualifying offense based on *Rambler II* and a review of what offenses were common law felonies at the time of article II, section 7's passage. Common pleas observed that, even if it adopted *Bracey*'s common law felony approach, manslaughter was a common law felony, and Crosby admitted to being convicted of manslaughter. (*Id.* at 9.)

Crosby appealed to this Court and filed, as directed, a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b). Common pleas issued an order designating its prior opinion as its reasoning for granting the Motion and removing Crosby as Mayor.

6

## II.    JURISDICTION

### A.    *This Court's August 10, 2022 Order*

By order dated August 10, 2022, this Court issued a per curiam order questioning whether we, or the Supreme Court, have jurisdiction to consider Crosby's appeal. This order states:

> NOW, August 10, 2022, upon review of this matter, it appears that Appellant . . . Crosby seeks review of the June 3, 2022[] Order of . . . [common pleas] that granted judgment on the Pleadings on Appellee [Commonwealth's] . . . Complaint . . . . [Common pleas] determined [Crosby] was ineligible to sit as Mayor . . . due to a felony conviction for aggravated assault.
>
> Section 722(2) of the Judicial Code, 42 Pa.C.S. § 722(2), provides that the Supreme Court has exclusive jurisdiction of appeals from final orders in cases involving the right to public office. There appears to be, however, circumstances under which an intermediate appellate court may exercise jurisdiction over such appeals. *See* [*Spano*].
>
> Accordingly, the parties shall address this Court's appellate jurisdiction over the appeal in their principal briefs on the merits.

*Commonwealth ex rel. Andy J. Watson, Dist. Att'y v. Crosby* (Pa. Cmwlth., No. 605 C.D. 2022, filed Aug. 11, 2022). The parties have provided their arguments as to this Court's jurisdiction over Crosby's appeal and, as this issue is a threshold one, we address it first.

### B.    *Parties' Arguments*

Crosby acknowledges she may have made a mistake in filing her appeal with this Court, rather than with the Supreme Court pursuant to Section 722(2) of the Judicial Code. Nonetheless, Crosby argues *Spano* can provide this Court jurisdiction because common pleas decided this matter on the pleadings, rather than by allowing

her an opportunity to flesh out the facts related to the underlying criminal convictions to meet the requirement set forth in *Rambler II*. Citing *Spano*'s discussion of what "right to public office" means and that "it does not normally include an appraisal of the sufficiency of the evidence or other irregular aspects of a tribunal which discharges an office holder," Crosby argues this matter falls in the category over which the Supreme Court does not have exclusive jurisdiction. (Crosby's Br. at 3, 26-27 (quoting *Spano*, 701 A.2d at 567).) This Court has appellate jurisdiction, Crosby argues, pursuant to Section 762 of the Judicial Code, 42 Pa.C.S. § 762, because common pleas' order is a final order involving local government and civil or criminal matters related to public officers. If relief under *Spano* is not available, Crosby requests the Court to transfer the appeal to the Supreme Court under Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a), and Pennsylvania Rule of Appellate Procedure 751(a), Pa.R.A.P. 751(a).[7]

The Commonwealth responds this Court does not have jurisdiction over this matter and the fact that common pleas did not allow irrelevant factual testimony does not vest this Court with jurisdiction. According to the Commonwealth, jurisdiction does not lie with the Supreme Court either because this matter does not involve the right to public office in an election prequalification challenge but is the equivalent of a general vacancy in an elected office and, therefore, the exclusivity provisions of Section 722(2) of the Judicial Code do not apply. Instead, the Commonwealth asserts jurisdiction lies with the Superior Court, consistent with *Commonwealth ex*

---

[7] Section 5103(a) of the Judicial Code provides that a court should not quash or dismiss an appeal that is filed in a court or magisterial district that does not have jurisdiction over the appeal, "but shall transfer the record thereof to the proper tribunal of this Commonwealth." 42 Pa.C.S. § 5103(a). Rule 751(a) similarly states that if an appeal is filed in a court or magisterial district that does not have jurisdiction, that court should not quash or dismiss the appeal, but transfer the record to the proper court. Pa.R.A.P. 751(a).

8

*rel. Kearney v. Rambler*, 991 A.2d 909 (Pa. Super. 2010) (*Rambler I*), *vacated by Rambler II*, and *Spano*, both of which involved removals of elected officials from their offices and appeals to the Superior Court.

### C.    Discussion

This matter raises questions over which Court, the Supreme Court, the Superior Court, or this Court, has jurisdiction over Crosby's appeal. The Judicial Code outlines the jurisdictional boundaries of each appellate court, which ordinarily set forth which court considers which issues on appeal. However, there are exceptions. *See* Pa.R.A.P. 741(a) (providing that an appellee's failure to file an objection to an appellate court's jurisdiction on or before the last day for filing the record "shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court"). We begin with those jurisdictional boundaries set forth in the Judicial Code.

The Superior Court has "exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except" classes of appeals over which jurisdiction has been exclusively vested in the Supreme Court or the Commonwealth Court. Section 742 of the Judicial Code, 42 Pa.C.S. § 742. This Court has exclusive jurisdiction over appeals from final orders of courts of common pleas involving, relevantly, local government civil matters relating to "the application, interpretation and enforcement of any statute regulating the affairs of political subdivisions, municipality . . . and public . . . officers . . . acting in their official capacity," and "statute[s] relating to elections, campaign financing or other election procedures." 42 Pa.C.S. § 762(a)(4)(i)(A), (C). Similar to the Superior Court, our appellate jurisdiction does not extend to classes of appeals from common pleas subject to the

9

Supreme Court's exclusive jurisdiction under Section 722 of the Judicial Code. 42 Pa.C.S. § 762(b). Section 722(2) provides: "The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases: . . . [t]he right to **public office**." 42 Pa.C.S. § 722(2) (emphasis added).[8]

In *Appeal of Bowers*, our Supreme Court defined the term "'public office' . . . to mean an elective or appointive position in which the incumbent is exercising a governmental function which involves a measure of policy making and which is of general public importance." 269 A.2d 712, 716-17 (Pa. 1970). The Court then defined the phrase "the right to public office:"

> The "right" to office undoubtedly includes questions of qualification, eligibility, regularity of the electoral or appointive process and other preconditions to the holding of a particular public office. We think "right" should not normally include an appraisal of the sufficiency of or ruling upon evidence or other allegedly irregular aspects of the proceedings before a hearing tribunal resulting in an officeholder's discharge from his position.

*Id.* at 716. Ultimately, the Court in *Appeal of Bowers* found the challenges to the school board's discharge of a school superintendent involved removal proceedings, as well as a denial of due process, and, that the superintendent's position was not a "public office" governed by Section 722(2). Therefore, exclusive jurisdiction over the appeal was not in the Supreme Court. *Appeal of Bowers*, 269 A.2d at 716-17.

In *Spano*, the Supreme Court relied on its analysis in *Appeal of Bowers* to reverse a Superior Court order transferring to the Supreme Court an appeal by a borough constable who had been removed from his position after his conviction for

_____

[8] The Supreme Court has original, but not exclusive, jurisdiction over *quo warranto* actions involving an officer of statewide jurisdiction. Section 721(3) of the Judicial Code, 42 Pa.C.S. § 721(3).

10

indecent assault.  In finding the appeal did not involve a "right to public office" subject to the Supreme Court's exclusive appellate jurisdiction, but involved removal proceedings, which are appealable to an intermediate appellate court, the Supreme Court explained the rationale underlying *Appeal of Bowers*:

> **There are sound public policy reasons for the distinction** which was **drawn** in *Appeal of Bowers* **between prequalification actions and removal actions**.  **When the results of an election are challenged**, **the occupancy of a key public office is left uncertain** until the legal contest is decided by the courts.  **For as long as the contest goes on**, **there is uncertainty over who is the rightful occupant of that office and no policy can be made**.  Similarly, when a challenge is mounted to the candidacy of an individual for public office, the election would be tainted by uncertainty if the challenge were not definitively resolved before the election took place.  The cases relied upon by the Superior Court, *Egan v. Mele*, . . . 634 A.2d 1074 ([Pa.] 1993)[,] and *Commonwealth ex rel. Waltman v. Gracyk*, . . . 460 A.2d 1098 ([Pa.] 1983), both involved prequalification challenges.  **In such cases**, **the public interest in having a functioning representative government demands that the contest be terminated as expeditiously as possible**.  Therefore appeals come directly to this court, not because we have more expertise, but because the answer will be final.
>
> **The public interest is not impacted to the same degree when an officeholder is removed**.  The situation then is comparable to when an officeholder dies or is incapacitated in office.  **The public is not faced with the same uncertainty resulting from competing claims to public office.**  Instead, someone else will fill the position as provided for in the applicable statute or ordinance.  If the removal was wrongful, the officeholder can eventually be reinstated in place of the deputy *pro tem*, again with no interruption to the operation of the government.  **We do not belittle the importance of [a]ppellant's right to appeal his removal from office, but that right is fully protected by his right to appeal to the Superior Cour**t with the possibility of a discretionary appeal to this court later.

11

*Spano*, 701 A.2d at 567-68 (emphasis added).[9]

In *Rambler I*, in which a mayor challenged his removal from office pursuant to article II, section 7, the Superior Court observed "*Spano* focus[ed] on whether the defendant is seeking office or already is in office" to decide whether Section 722(2) was implicated. The Superior Court explained: "If the former, government becomes paralyzed – 'no policy can be made' until the entitlement to assume office is resolved" and "[t]he public interest requires an immediate resolution of the issue so that government can return to normal function." 991 A.2d at 912. Contrarily, if the individual "is already in office, *Spano* finds the need for expedited resolution less urgent," and "'[t]he public interest is not impacted to the same degree when an officeholder is removed.'" *Id.* at 912-13 (quoting *Spano*, 701 A.2d at 567). "Based on *Spano*'s distinction between 'prequalification actions' and 'removal actions,'" the Superior Court held "the Supreme Court [did] not have exclusive jurisdiction under" Section 722(2) and addressed the substantive issues of the mayor's appeal of the grant of judgment on the pleadings of the complaint in *quo warranto*. *Id.* at 913.

Based on the Supreme Court's distinction between "prequalification actions"[10] and "removal actions" for the purpose of appellate jurisdiction, as

---

[9] Both *Appeal of Bowers* and *Spano* recognized there may be a day when the Supreme Court will recognize an exception to this rule if it is necessary to protect the public's interests, but a general assertion that there is a loss of services by a particular office holder will not be sufficient. *Spano*, 701 A.2d at 568; *Appeal of Bowers*, 269 A.2d at 716. No such exception is asserted here.

[10] In reviewing the meaning of the "right to public office" in an elector's challenge to a candidate's ability to seek an office under the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591, this Court has delineated between the "right to **seek** public office" and the "right to **hold** public office," with the former falling within this Court's appellate jurisdiction and the latter falling within the ambit of the Supreme Court's exclusive jurisdiction. *McMenamin v. Tartaglione*, 590 A.2d 802, 805-06 (Pa. Cmwlth. 1991) (emphasis in the original).

12

discussed in *Spano*, and the fact that this matter is a removal action, we conclude that the Supreme Court does not have exclusive jurisdiction under Section 722(2).[11]

This leads to the question of whether this Court has jurisdiction pursuant to Section 762, as Crosby claims, or the Superior Court has jurisdiction pursuant to Section 742, as the Commonwealth claims. Ultimately, this Court's jurisdiction was perfected, **at least with regard to the Superior Court**, pursuant to Section 704 of the Judicial Code, 42 Pa.C.S. § 704, and Rule 741(a). According to Section 704 and Rule 741(a), an appellee's objection to an appellate court's jurisdiction must be timely raised, and to be timely, the objection must be made before the last day for the filing of the record[12] or it is waived. 42 Pa.C.S. § 704; Pa.R.A.P. 741(a). The failure to timely object to jurisdiction, "unless the appellate court shall otherwise order, operate[s] to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another

---

[11] There have been occasions where we have transferred appeals of *quo warranto* complaints filed in this Court to the Supreme Court pursuant to Section 722(2), but they involved the regularity of the appointment process and competing claims to the right to hold a particular public office, which triggered the need of the immediate finality found in a direct appeal to the Supreme Court to resolve the accompanying uncertainty. *See, e.g.*, *Reed v. Harrisburg City Council*, 995 A.2d 1137, 1139 (Pa. 2010) (describing that this Court transferred the matter to the Supreme Court via single-judge order pursuant to Section 722(2)); *Rastell v. DeBouse*, 736 A.2d 756 (Pa. Cmwlth. 1999) (*quo warranto* action filed to determine which of two individuals was properly appointed to a redevelopment authority). Thus, we distinguished *Rastell* from *Appeal of Bowers* and *Spano* because the matter involved competing claims to an appointed seat. *Rastell*, 736 A.2d at 758-59. However, there are cases where this Court decided appeals in non-prequalification *quo warranto* actions, notwithstanding observing that jurisdiction was probably within the Supreme Court, but because no challenge to this Court's jurisdiction was filed, our jurisdiction was perfected. *Bolus v. Murphy*, 823 A.2d 1075, 1077 n.1 (Pa. Cmwlth. 2003) (*Bolus II*), *disapproved of in part on other grounds*, *Reed*, 995 A.2d at 1140. These cases did not discuss *Spano* or *Appeal of Bowers* having concluded that the jurisdictional issue was waived and, therefore, are distinguishable.

[12] Pennsylvania Rule of Appellate Procedure 1931(a)(1) generally requires that "the record on appeal . . . shall be transmitted to the appellate court within 60 days after the filing of the notice of appeal." Pa.R.A.P. 1931(a)(1).

13

appellate court." Pa.R.A.P. 741(a). Although this Court's August 10, 2022, order raised a question about this Court's jurisdiction, that question was limited to whether the Supreme Court or this Court had jurisdiction. The Commonwealth first asserted that the Superior Court had jurisdiction in its brief, which was long after the last day for filing the record in this Court.

Moreover, even if the Commonwealth had not waived the objection, we would conclude this Court has jurisdiction to consider Crosby's appeal. There does not appear to be a clear delineation between this Court and the Superior Court in deciding *quo warranto* removal actions. For example, there seems to be a jurisdictional split with regard to constables, whereby the Superior Court hears appeals based on the removal of constables from their offices and this Court considers appeals of denials of petitions for appointment. *See, e.g.*, *In re Lehigh County Constables*, 172 A.3d 712 (Pa. Cmwlth. 2017) (appeal from denial of petition seeking appointment of deputy constables); *In re Seminerio* (Pa. Cmwlth., No. 98 C.D. 2017, filed Nov. 15, 2017) (appeal from denial of petition for appointment of constable); *In re Petition to Remove Constable Visoski*, 852 A.2d 345 (Pa. Super. 2004) (removal); *In re Page*, 205 A.2d 637 (Pa. Super. 1964) (removal of constable). Notably, this Court transferred the appeal of a removal of a constable to the Superior Court in *In re Truss* (Pa. Cmwlth., No. 779 C.D. 2017, filed Apr. 18, 2018), slip op. at 4, citing Section 742 and noting "the Superior Court has routinely exercised jurisdiction over appeals involving such removal actions." The Superior Court has also decided non-constable removal actions. *Rambler I* involved, as here, a mayor, and that matter was decided by the Superior Court. These cases suggest removal actions fall under Section 742 rather than Section 762.

14

However, this Court also has decided appeals of non-prequalification, non-dual appointment *quo warranto* complaints. *See, e.g.*, *Commonwealth ex rel. Christine v. Lambert* (Pa. Cmwlth., No. 2118 C.D. 2008, filed July 2, 2009) (appeal from order sustaining preliminary objections to *quo warranto* complaint seeking to remove municipal authority executive director due to conviction for infamous crime); *Bolus v. Murphy*, 823 A.2d 1075 (Pa. Cmwlth. 2003) (*Bolus II*) (appeal from order sustaining preliminary objections to *quo warranto* complaint against two city council members alleging they were not qualified to hold those positions), *disapproved of in part on other grounds*, *Reed v. Harrisburg City Council*, 995 A.2d 1137, 1140 (Pa. 2010); *Commonwealth ex rel. Lafayette v. Black*, 620 A.2d 563 (Pa. Cmwlth. 1993) (appeal of order granting judgment on the pleadings on *quo warranto* complaint to determine if sitting borough council president was valid); *Ret. Bd. of Allegheny Cnty. v. Allegheny Cnty. Retirees Ass'n*, 590 A.2d 1338 (Pa. Cmwlth. 1991) (appeal from order granting summary judgment on complaint seeking to remove two elected officers from county retirement board). In some of those cases, questions as to this Court's appellate jurisdiction arose, but in relation to the Supreme Court, **not** in relation to the Superior Court. *Lambert*, slip op. at 5 n.2; *Bolus II*, 823 A.2d at 1077 n.1. Arguably, these removal actions are civil matters that involve local officials and the interpretation of a statute, the Pennsylvania Constitution, regulating their affairs, including their ability to perform their duties, which would fall within the ambit of Section 762(a)(4)(i)(A). *See In re Silverman*, 90 A.3d 771, 775 (Pa. Cmwlth. 2014) (declining to quash or re-transfer to the Superior Court an appeal of a decision by a president judge acting as a court administrator relating to "payment for services rendered by a court-appointed attorney" because this Court "arguably ha[d] jurisdiction pursuant to Section

15

762(a)(4) . . . ('Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases: . . . (4) Local government civil and criminal matters.')"). Importantly, this Court has addressed the removal of public officials and is familiar with these proceedings and the law related thereto. Thus, it cannot be said the issue is one peculiarly in the Superior Court's expertise. Therefore, we are not persuaded this Court lacks jurisdiction over Crosby's appeal so as to require its transfer to the Superior Court, particularly where judicial economy would not be served by that transfer.

We thus conclude we have appellate jurisdiction and will address the merits of Crosby's appeal.

### III.    MERITS

#### A.    Parties' Arguments

Crosby argues common pleas erred in granting judgment on the pleadings because, under *Rambler II*, she was entitled to an opportunity to demonstrate that, under the totality of the circumstances, her conviction for aggravated assault by vehicle, a third-degree felony, did not constitute an infamous crime which would render her ineligible to hold the office of Mayor. Crosby asserts not all felonies should be considered infamous crimes, only those involving elements of deceit, theft, dishonesty, or the public administration of justice, which would be consistent with the Supreme Court's seminal 1842 decision in *Shaver*. Crosby acknowledges that precedent, including *Griffin*, *Richard*, and *Bolus I* "seem[] to suggest any and all felonies" are infamous crimes that are distinct from *crimen falsi* offenses. (Crosby's Br. at 34, 44-49.) Crosby argues, however, the Supreme Court in *Rambler II* "seemed to back off" this expansive holding by concluding that a federal felony was not automatically an infamous crime, and the totality of the circumstances

16

should be reviewed in each case to determine if the specific felony was infamous by "taking into consideration whether public officials who engage[d] in such conduct may still command public confidence as concerns their honesty, decency and good moral character." (Crosby's Br. at 35-37 (quoting *Rambler II*, 32 A.3d at 667).) Crosby argues that, under this standard, common pleas erred in granting judgment on the pleadings based only on her admission of a felony conviction, without examining, or allowing Crosby to establish, whether the underlying conduct involved deceit, dishonesty, or similar behavior, or the public administration of justice, which raised questions of disputed material fact. This analysis, Crosby asserts, is supported by the York County Court of Common Pleas' decision in *Bracey*, which applied *Rambler II* to allow the presentation of evidence to determine whether a felony drug conviction was an infamous crime rendering a city councilperson ineligible under article II, section 7. *Rambler II*'s and *Bracey*'s examination of the conduct itself, rather than just the grading of the crime, is consistent, Crosby argues, with changes in Pennsylvania law regarding felonies, including the elimination of the prohibition against people convicted of felonies from voting or sitting as a juror. (Crosby's Br. at 45-46 (citing *Mixon v. Commonwealth*, 759 A.2d 442 (Pa. Cmwlth. 2000)).)

The Commonwealth argues common pleas committed no error of law in granting judgment on the pleadings because precedent establishes a conviction "of a felony in . . . Pennsylvania or . . . an offense involving *crimen falsi*, or a like offense involving a charge of falsehood that affects the public administration of justice shall be grounds to remove a public official from their office." (Commonwealth's Br. at 9.) The Commonwealth asserts Crosby's arguments to the contrary are not the law in Pennsylvania, which recognizes "felonies and *crimen falsi* offenses [as] distinct

17

(albeit overlapping) categories, both of which contribute to the definition of infamous crime." (*Id.* at 10 (quoting *Griffin*, 946 A.2d at 674).) The Commonwealth maintains "[o]ver 150 years of precedent should not be overturned based upon the limited holding in . . . *Rambler* [*II*]," and *Rambler II* is readily distinguishable from the matter *sub judice*. (*Id.* at 11-12.)

### B. Discussion

When reviewing a "decision to grant a motion for judgment on the pleadings, this [C]ourt's scope of review is plenary." *Piehl v. City of Philadelphia*, 930 A.2d 607, 610 n.5 (Pa. Cmwlth. 2007). This review is confined to considering the pleadings, and we must accept "as true all well[-]pled statements of fact, admissions and any documents properly attached to the pleadings presented by the party against whom the motion is filed." *Id.* "[T]his [C]ourt will sustain the . . . grant of judgment on the pleadings only where the movant's right to succeed is certain and the case is so free from doubt that a trial would be a fruitless exercise." *Id.*

Article II, section 7 of the Pennsylvania Constitution imposes a prohibition against certain persons from holding office in Pennsylvania, stating "[n]o person hereafter convicted of embezzlement of public moneys, bribery, perjury or **other infamous crimes**, shall be eligible to the General Assembly or capable of holding any office of trust or profit in this Commonwealth." PA. CONST. art. II, § 7 (emphasis added).[13] To successfully establish a *quo warranto* action, the following must be

---

[13] As a general rule, a *quo warranto* action constitutes the proper method to challenge the title or right to public office. *In re One Hundred or More Qualified Electors*, 683 A.2d 283, 286 (Pa. 1996). The rationale for the exclusivity of the *quo warranto* remedy is:

> [*Q*]*uo warranto* is the Gibralter of stability in government tenure. Once a person
> is duly elected or duly appointed to public office, the continuity of [the person's]

**(Footnote continued on next page…)**

18

established: "(1) that the person to be ousted has been convicted of a crime; (2) that the crime committed constitutes an infamous crime; and (3) that the person holds a public office." *Richard*, 751 A.2d at 651 n.11. "The purpose of removing one from public office under [article II, section 7] is not to punish the officer. Instead, it is to assure the requisite good character of those individuals whom our citizens look to for governance." *Id.* at 650.

In *Shaver*, our Supreme Court described the meaning of "infamous crimes," stating: "The offences which disqualify a person to give evidence, when convicted of the same, are treason, felony, and every species of the *crimen falsi* . . . , and other offences of the like description, which involve the charge of falsehood, and affect the public administration of justice." 3 Watts & Serg. at 342.[14] Since *Shaver*, both the Supreme Court and this Court have consistently recognized, in cases involving convictions under Pennsylvania criminal law, that a felony conviction constitutes an infamous crime that is separate from a *crimen falsi* offense.

In *Richard*, the Supreme Court explained that *Shaver* classified as infamous crimes "felonies **and** *crimen falsi* offenses . . . , which has been followed for over [150] years in this Commonwealth" and reaffirmed "that a crime is infamous for purposes of [a]rticle II, [s]ection 7, if its underlying facts **establish a felony**, a *crimen*

---

services may not be interrupted and the uniform working of the governmental machinery disorganized or disturbed by any proceeding less than a formal challenge to the office by that action which is now venerable with age, reinforced by countless precedent, and proved to be protective of all parties involved in a given controversy, namely *quo warranto*.

*Id.* (citing *In re Bd. of Sch. Dirs.*, 180 A.2d 16, 17 (Pa. 1962)).

[14] Our Supreme Court has explained that *Shaver*'s reliance on whether a particular crime would disqualify an individual from being a juror or giving evidence was "unworkable," and that the Supreme Court had reviewed crimes without regard to whether they affected the individual's ability to serve on a jury or give evidence. *Richard*, 751 A.2d at 652 & n.12.

19

*falsi* offense, **or** a like offense involving the charge of falsehood that affects the public administration of justice." *Richard,* 751 A.2d. at 652-53 (emphasis added). The Court further explained that the scope of infamous crimes "espoused in *Shaver* was 'not sufficiently inclusive for the modern era,'" and that crimes that "may not have existed at the time the Constitution was framed, may qualify as 'infamous crimes' today." *Id.* at 653 (quoting *Petition of Hughes*, 532 A.2d at 302). Applying these longstanding principles, the Supreme Court examined the convictions of the removed borough councilperson for terroristic threats, unlawful restraint, possession of an instrument of crime, firearms not to be carried without a license, and reckless endangerment of another person. The Supreme Court concluded that, while reprehensible, such crimes were not infamous and a constitutional impediment to holding office because they did not "involve a felony, . . . a *crimen falsi* offense, or a like offense involving the charge of falsehood that affects the public administration of justice." *Id.* at 653.[15] This Court, in *Bolus I*, interpreted *Richard* as holding "that **all** felonies are infamous crimes." *Bolus I*, 785 A.2d at 177 (emphasis added). *See also In re Bolus*, 251 A.3d 848, 854 (Pa. Cmwlth. 2021) (holding that under *Richard*, "a candidate who has been convicted **of either a felony or a *crimen falsi* offense** is constitutionally ineligible to hold elected office in the Commonwealth") (emphasis added).

The Supreme Court subsequently applied *Richard* in *Griffin* to reject arguments similar to those made by Crosby here.[16] In *Griffin*, a municipal judge,

---

[15] Justice Castille wrote a concurring and dissenting opinion, joined by Justices Nigro and Newman, in which Justice Castille noted that what constitutes a felony is subject to alteration by the Legislature, that the underlying nature of the conduct, rather than the grading of the offense, should be the focus, and that the appellant's crimes in *Richard* should have been considered infamous notwithstanding they were not felonies or *crimen falsi* offenses. *Richard*, 751 A.2d at 654 n.3, 655 (Castille, J., concurring and dissenting).

[16] Crosby's counsel represented the respondent in *Griffin*.

20

who was subject of a *quo warranto* action based on felony convictions for fraudulently procuring a credit card, argued that precedent reflecting that "all" or "any" felonies constituted infamous crimes "appear[ed] to go too far" and urged that only felonies (and *crimen falsi* offenses) which undermined the administration of justice should be considered disqualifying infamous crimes. 946 A.2d at 673. The Supreme Court rejected those arguments, stating "in the years since *Shaver* was decided this Court has consistently adhered to an interpretation in which **felonies and *crimen falsi* offenses are distinct (albeit overlapping) categories**, **both of which contribute to the definition of infamous crimes**." *Griffin*, 946 A.2d at 674 (emphasis added). An interpretation treating crimes as infamous only if they were *crimen falsi* offenses or felonies that undermine the administration of justice "would render *Shaver*'s use of the term 'felony' superfluous." *Id.* The Court was not troubled that what constitutes a felony may change over time based on legislation, reasoning: "As recognized by *Shaver*, the constitutional prohibition is triggered only by a conviction, and not by the mere fact of dishonest, or even criminal, conduct," which "implies that the framers . . . intended that the law in force at the time of the conviction should determine whether the crime was infamous." *Id.* at 675. This is a public policy determination (within constitutional limitations) to be made by the Legislature, as the political branch of the government subject to the will of the electorate. *Id.* Because the respondent had been convicted of felonies, which also fell into the other two categories, the Supreme Court concluded the convictions were for constitutionally infamous crimes. *Id.* at 676, 681.

Crosby acknowledges this precedent but relies on *Rambler II* to argue the Supreme Court has decided to allow deviation from its longstanding precedent. The Commonwealth argues *Rambler II* is distinguishable. We agree that *Rambler II* is

21

distinguishable, and although Crosby offers sound reasons why *Rambler II*'s approach should replace the existing standard, until our Supreme Court does so, we are bound by existing precedent.

In *Rambler II*, the Commonwealth, through the York County District Attorney, filed a *quo warranto* complaint seeking the removal of a mayor based on the mayor pleading guilty to "a federal felony charge of mailing threatening communications," which the Commonwealth alleged was an infamous crime. 32 A.3d at 661. The local common pleas court granted judgment on the pleadings in favor of the Commonwealth. The Superior Court reversed, accepting the mayor's argument that because the federal conviction carried a maximum sentence of two years, it would be comparable to a misdemeanor in Pennsylvania and "was not constitutionally infamous." *Id.* at 662. The Commonwealth appealed. In accepting the appeal, the Supreme Court described the main question before it as "whether a federal felony offense constitutes an 'infamous crime' that disqualifies an individual from holding public office under [a]rticle II, [s]ection 7 . . . , notwithstanding that a similar offense defined under the [] Crimes Code[17] is graded a misdemeanor." *Id.* at 660.

To answer this question, the Supreme Court reviewed its precedent, including *Shaver*, *Richard*, and *Griffin*, to determine if all felonies, even those defined by other jurisdictions, were infamous crimes. *Rambler II*, 32 A.3d at 662-63. The Supreme Court explained its statement in *Griffin* regarding felonies as being a distinct category of infamous crimes did not mean that "all extra-jurisdictional offenses graded as felonies are constitutionally infamous." *Id.* at 664. Rather, the Court acknowledged that "**as it pertain[ed] to in-state [c]rimes, [it] ha[d] adopted a**

---

[17] 18 Pa.C.S. §§ 101-9546.

22

**posture of deferring to [its] own Legislature whereby <u>any</u> crime classified as a felony is deemed an infamous one by virtue of such classification**," although the Court noted there could come a time when the Legislature created a felony that so departed from what was contemplated in *Shaver* and the minds of the framers that the label alone would be insufficient. *Id.* (emphasis added). The salient point for the Court, however, was that nothing in *Shaver* or its precedent "**require[d] substantial deference to out-of-state legislative bodies**," particularly where, "at least at the federal level, the felony-misdemeanor distinction has now 'solidified at the one-year line,'" which no longer reflects the assumption that a felony constituted a "grave moral transgression inherent in the underlying crime." *Id.* at 665. The Supreme Court also noted the proliferation of federal felonies which may be only *malum prohibitum*, rather than *malum in se*.[18] *Id.* at 665-66. Thus, the Supreme Court concluded the labeling of a crime as a felony by some other jurisdiction or comparing the extra-jurisdictional crime to a Pennsylvania crime was not sufficient to render the crime infamous. *Id.* at 666. Instead, "when analyzing the state constitutional implications **of a federal felony conviction**, it is appropriate to consider the character of the underlying conduct" and "assess constitutional infamy by taking into consideration whether public officials who engage in such conduct may still command public confidence as concerns their honesty, decency, and good moral character." *Id.* at 666-67 (emphasis added). Examining the conduct underlying the mayor's federal felony conviction in *Rambler II*, which involved the mayor's attempt "to reap dishonest gain" by "attempt[ing] to steal from other

---

[18] A crime "*malum prohibitum*" is "[a]n act that is a crime merely because it is prohibited by statute, although the act is not necessarily immoral." Black's Law Dictionary 1045 (9th ed. 2009). In contrast, a "*malum in se*" crime is "[a] crime or act that is inherently immoral, such as murder, arson, or rape." *Id.*

23

persons by threatening . . . them," the Supreme Court held such conduct was "quite obviously[] 'inconsistent with commonly accepted principles of honesty and decency,'" and was infamous for the purposes of article II, section 7. *Id.* at 667.

Crosby argues *Rambler II*'s analysis should be applied to **in-state** felonies. However, consistent throughout the Supreme Court's analysis was its recognition that the issue before it involved an **extra-jurisdictional** felony conviction and whether the designation by the federal government of the crime as a felony was entitled to deference and should control. The Supreme Court concluded no deference was due to those out-of-state designations and, in those situations, the underlying conduct must be reviewed to determine if it met the article II, section 7 standard for constitutional infamy. The Supreme Court clearly distinguished the treatment of extra-jurisdictional felony convictions from in-state felony convictions. In the latter situation, the Supreme Court restated its precedent, which gave deference to the Legislature's classification of a crime as a felony and held in-state felonies are a distinct (but perhaps overlapping) classification of infamous crime. Nothing in *Rambler II* overrules *Richard*, *Griffin*, or *Bolus I*, and the Supreme Court cited each for the above legal principles, which are equally applicable in this matter.[19]

The Supreme Court in *Rambler II* recognized the possibility the Legislature could create a felony which could deviate "so sharply from" *Shaver*'s definition of infamous crimes that it would not qualify as an infamous crime. Guidance can be found in the *Rambler II* Court's stated concerns regarding out-of-state felonies as to what types of felonies might deviate from *Shaver* so as to not rise to constitutional

---

[19] Because we do not find Crosby's arguments about *Rambler II* changing the analysis of in-state felonies persuasive, we will not address Crosby's reliance on *Bracey*, which is not precedential, as support for reversing.

24

infamy. For example, in *Rambler II*, two of the Supreme Court's reasons for not deferring to the federal law's classification of a crime as a felony were 1) because federal law classifies any crime to which a sentence of over one year of imprisonment is a felony, rather than misdemeanor, and 2) the proliferation of *malum prohibitum* felonies, which would include "[u]sing profanity in a 'ham' radio transmission" or "purchasing a field jacket from a member of the Armed forces." 32 A.3d at 665 & n.7. In the Supreme Court's view, federal law's use of a one-year sentence to define a felony weakened the reasonable assumption, held "in the past centuries," "that the invariably severe punishment for a felony reflected the grave moral transgression inherent in the underlying crime." *Id.* at 665. Further, relying on extra-jurisdictional felonies that may only be *malum prohibitum*, the Supreme Court stated, "could result in a disqualification . . . for violating laws 'which are wholly unknown here'" and could cause the disqualification of one "'who is morally blameless according to our own standards.'" *Id.* (quoting *State ex rel. Barrett v. Sartorious*, 175 S.W.2d 787, 791-92 (Mo. 1943) (Ellison, J., concurring)). Such concerns are not present in this matter as aggravated assault by vehicle under Pennsylvania law is not a *malum prohibitum* offense that is "wholly unknown here," (*id.*), and the maximum sentence for a third-degree felony is seven years under Section 1103 of the Crimes Code, 18 Pa.C.S. § 1103, with a potential two-year enhancement for the felony at issue pursuant to Section 3732.1(b) of the Vehicle Code, 75 Pa.C.S. § 3732.1(b).

While the Court is sympathetic to Crosby's position, we are not persuaded that longstanding precedent, including *Griffin*, *Richard*, and *Bolus I*, which identifies felonies and *crimen falsi* offenses as **distinct** types of infamous crimes that would support the removal of a public official from office, can be abandoned based on

25

*Rambler II*. Adopting Crosby's interpretation that a felony is **only** an infamous crime if it involves deceit, theft, dishonesty, or similar conduct in the administration of public justice, would be contrary to the Supreme Court's conclusion in *Griffin*.

Thus far, as to Pennsylvania felonies, our Supreme Court has "see[n] no reason to depart from [the] established principle[s]," which have "been followed for over [150] years," "that a crime is infamous for purposes of [a]rticle II, [s]ection 7, if its underlying facts establish **a felony**, a *crimen falsi* offense, **or** a like offense involving the charge of falsehood that affects the public administration of justice." *Richard*, 751 A.2d at 652-53 (emphasis added). Until the Supreme Court decides to depart from those principles, this Court must abide by them. Applying those principles, and reviewing the pleadings and documents attached thereto in the light most favorable to Crosby as the non-moving party, we are constrained to find no error in common pleas' grant of judgment on the pleadings. Crosby admitted to pleading guilty to and being convicted of aggravated assault by vehicle, which is a third-degree felony; thus, the fact of Crosby's conviction of a felony is undisputed. Under *Griffin*, *Richard*, and *Bolus I*, the conviction of a felony under Pennsylvania law constitutes an infamous crime under article II, section 7 of the Pennsylvania Constitution and supported common pleas' grant of judgment on the pleadings to the Commonwealth.

## IV.   CONCLUSION

Because this matter does not involve a prequalification challenge to an individual's eligibility to hold office, but rather a removal from office, the Supreme Court does not have exclusive jurisdiction pursuant to Section 722(2) of the Judicial Code. This Court's jurisdiction over Crosby's appeal was perfected under Rule 741(a) based on the lack of timely objection thereto by the Commonwealth. Finally,

26

pursuant to longstanding precedent of our Supreme Court and this Court, which was unaffected by *Rambler II*, an in-state felony conviction constitutes an infamous crime for the purposes of article II, section 7 of the Pennsylvania Constitution. Crosby's admission that she was convicted in Pennsylvania of a felony renders the fact of this conviction undisputed, and such conviction renders her ineligible to hold the office of mayor under the Pennsylvania Constitution. Accordingly, we are constrained to hold that common pleas did not err in granting judgment on the pleadings on this basis and, therefore, we affirm.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge McCullough and Judge Dumas did not participate in the decision in this case.

27

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania : 
ex rel. Andy J. Watson, District : 
Attorney : 
  : 
v. : No. 605 C.D. 2022 
  : 
Kaitlyn Nicole Crosby, : 
                 Appellant : 

# O R D E R

**NOW**, July 18, 2023, the Order of the Court of Common Pleas of Potter County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge