## Commonwealth *ex rel.* Parker *et al. versus* Emminger.[1]

1. The return judges of two counties composing a senatorial district, made a due return in their respective counties of the votes for senator, by which it appeared that Weakley had the largest number of votes. The return judges of the whole district refused to sign a certificate of election. *Held*, that they could be compelled by mandamus to sign a proper certificate.

2. The judges certified "that from the county returns it appears that in Cumberland, Weakley received 4263 votes and Peffer 4114 votes; in Franklin, Weakley had 4605 votes and Peffer 3951 votes; and it appearing that fraud and bribery have been made use of in obtaining votes to so large an extent as to vitiate the election or change the result, we decline to certify the election of either of said candidates and refer the subject to the Senate," &c. *Held*, the certificate was not a compliance with requirements of the Act of Assembly.

3. They were bound to certify that the person appearing by the county returns to have the greatest number of votes was elected; the county returns being conclusive on the district return judges; except perhaps a plain clerical mistake.

4. The district return judges have no supervisory power to examine what preceded the county returns.

5. The Senate is the only tribunal to investigate charges of fraud, &c., in the election of one of its members.

November 16th 1871.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

---

[1] No paper-books were furnished in this case and the reporter was not able until recently to obtain the record. The decision is now reported at the suggestion of others as containing important principles in connection with the election laws.

[Commonwealth *ex rel*. Parker *v*. Emminger.]

This was an application at the relation of Isaac B. Parker and other citizens and voters of the Nineteenth Senatorial District of Pennsylvania, composed of the counties of Cumberland and Franklin, for a mandamus to John Emminger, one of the return judges of that district, commanding him to sign a proper certificate that James M. Weakley had been elected senator from that district at an election held on the 10th of October 1871, file such certificate in the office of the prothonotary of Cumberland county, and transmit a duplicate to the secretary of the Commonwealth, as required by the Act of July 2d 1839.

The petition of the relators set forth that the return judges of Cumberland county certified that at the election Henry K. Peffer received in that county 4114 votes for senator, and James M. Weakley received 4263 votes for the same office, and filed their certificate in the office of the prothonotary of that county ; that the return judges of Franklin made and filed a similar certificate that Henry K. Peffer had received in that county for the office of senator 3951 votes, and James M. Weakley had received 4605 votes ; that John Emminger, one of the return judges of Cumberland county who had signed the general return for that county, was appointed return judge from that county for the district, and that Henderson G. Skiles, one of the return judges of Franklin county, who had signed the general return for that county, was appointed return judge from that county for that district ; that these two return judges met at the court-house in Carlisle on the day appointed by law, and signed a certificate as follows :—

" We, the return judges of the 19th Senatorial District, having met at the court-house in the borough of Carlisle, on October 17th 1871, to cast up the votes cast in the said district, composed of the counties of Cumberland and Franklin, for a senator therefrom, do certify that from the county returns it appears that in the county of Cumberland James M. Weakley received 4263 votes, and Henry K. Peffer had 4114 votes. In the county of Franklin J. M. Weakley had 4605 votes and Henry K. Peffer 3951 votes ; and · it appearing that fraud and bribery have been made use of in obtaining votes to so large an extent as to vitiate the election or change the result, we decline to certify to the election of either of said candidates, and refer the subject to the senate, which under the Constitution is made the judge of the qualification of its own members.                                    " John Emminger,
                                        " H. G. Skiles,
                    " Return Judges 19th Sen. Dist., Pa."

One copy of this certificate was filed in the prothonotary's office, one transmitted to the secretary of the Commonwealth, and one to James M. Weakley ; that afterward Skiles signed a certificate setting forth that James M. Weakley had received the

[Commonwealth *ex rel.* Parker *v.* Emminger.]

highest number of votes in the Senatorial District, and that he was duly elected senator; this certificate was filed in the prothonotary's office and transmitted to the secretary of the Commonwealth and Mr. Weakley respectively.

The petition averred that it appeared by the record as above set forth that Mr. Weakley had received a majority of votes for senator in the 19th district, and was entitled to a certificate of election; that the above-named return judges had refused to perform their duties in this behalf as required by law, and that by such refusal there was no record in the prothonotary's office of the election of state senator in the 19th district, nor certificate of such election furnished to the secretary of the Commonwealth which would show to the Senate that any one had been elected senator from the 19th district, and the right of the petitioners and others to be represented in the Senate of the Commonwealth by one for whom they had voted and who had been duly elected would be taken away.

- The prayer was for a mandamus to compel Emminger, in conjunction with Skiles, to sign, file and transmit according to law a certificate that James M. Weakley had been elected senator of the 19th district.

Emminger answered, averring that it was not his duty to sign the certificate of election, for the reason that many irregularities were committed in the holding of the election, consisting of closing the polls in some districts before the hour fixed by law, adjourning to take dinner, receiving votes from persons who were not qualified voters, &c.; and for the reason that undue and improper influences were used with voters, and that numerous other frauds and irregularities, to the best of his belief and suspicion, had been perpetrated.

The Commonwealth filed a demurrer.

The case was argued by

*T. M. Marshall,* for the Commonwealth; and *R. M. Gibson* and *H. W. Weir,* for the respondent.

The opinion of the court was delivered, November 16th 1871, by

THOMPSON, C. J.—This is an application for a peremptory mandamus to the respondent forthwith to proceed to cast up and sign duplicate returns of the election and notice of election of state senator in the Nineteenth Senatorial district of this Commonwealth, composed of the counties of Cumberland and Franklin, at the election on the second Tuesday of October last, according to the requirements of the 82d, 83d and 84th sections of the Act of Assembly of the 2d of July 1839, which it is charged in the suggestion filed, and has been made to appear, he has hitherto refused to do.

The answer of the respondent is before us, and to this the relators have demurred.

24 P. F. SMITH—31

[Commonwealth *ex rel.* Parker *v.* Emminger.]

The respondent sets forth in his answer that he, the return judge of the county of Cumberland, met the return judge of the county of Franklin, H. G. Skiles, at the prothonotary's office at Carlisle, in the county of Cumberland, on the 17th day of October 1871, the time and place fixed for the meeting of the return judges in and for the said district, and did cast up and ascertain from the county returns that it appeared that in the county of Cumberland for senator, "Henry K. Peffer had 4114 votes, and that James M. Weakley had 4263 votes; in the county of Franklin J. M. Wheatley had 4605 votes, and that Henry K. Peffer had 3951 votes, and that it appearing that fraud and bribery have been made use of in obtaining said votes to so large an extent as to vitiate the said election, or change the result, we decline to certify to the election of either of said candidates, and refer the subject to the Senate, which under the Constitution is made the judge of the qualification of its own members." This both judges signed, and it was forwarded to the secretary of the Commonwealth. Afterwards it appears by the answer of respondent that Henderson G. Skiles, the return judge from Franklin county, on the 20th day of October, signed and forwarded to the secretary of the Commonwealth, and to the said James M. Weakley, the return and notice of election required by the Act of Assembly. In this the respondent did not join.

It is apparent from the certificate signed by the respondent, as set forth above, that from the county returns James M. Weakley received in the senatorial district a majority of 803 for senator, and was entitled to the certificate mentioned in the Act of Assembly, and notice of his election, viz., the duplicate returns of the fact, one to be sent to the secretary of the Commonwealth, through the post-office, one to be deposited in the prothonotary's office of the county of Cumberland, and a notice of his election to be sent to him. The returns of the counties presented these facts, and this is admitted in the certificate above mentioned, and set forth by the respondent as a portion of his answer.

The answer or pleas of the respondent against being required by a peremptory mandamus to certify further, as one of the return judges of the Nineteenth senatorial district, are, 1. Because he has already sufficiently certified according to the requirements of the Act of Assembly in the certificate already mentioned.

2. Because, in his capacity as one of the county return judges, he became aware of certain gross irregularties in the mode of conducting the election in several election districts in Cumberland county, which he names and sets forth, and also for want of proper returns by township or district election officers, required to be filed in the prothonotary's office. He also charges want of care and haste in the county return judges of Cumberland county, in making out the county return for senator as well as other returns.

[Commonwealth *ex rel.* Parker *v.* Emminger.]

3. Because, from facts within his own knowledge and other sources, which he alleges can be established by proof, "bribery and corruption were resorted to in order to secure the election of the said James M. Weakley," which facts he states somewhat at large, and alleges that he is prepared to prove them. From all this, he submits that he ought not to be required to make or sign other or further certificates or returns of election than those already signed by him.

We have not set out the pleas or answer of the respondent in full, but the substance of the same, and we are asked to say whether they are sufficient in law. That they are not, we do not for a moment hesitate to say.

(1.) As to the first plea. The certificate therein set forth is in no respect according to the Act of Assembly. The act says that when the return judges shall have met, "they *cast up the several county returns,* and make duplicate returns of all the votes given for such offices in said district (Senate, Congress or Assemblymen), and of the name of the person elected," and dispose of the duplicates when so made out as already stated; and further, the act provides that "it shall be the duty of the return judges in every case to transmit to each of the persons elected to serve in Congress, in the Senate or House of Representatives, a certificate of his election within five days after the day of making up such return."

In the certificate referred to, there is no counting up of the returns and certificate of the person elected senator, nor any pretence of notice to him of his election. On the contrary, this was refused, because, the judges say, it "appears that bribery and fraud" had been made use of to secure the election of the candidate having by the county returns a majority of votes in the district. So far from this being the certificate required by law, it was a refusal to certify. The returns were plain and intelligible, at least nothing to the contrary is alleged, and the only duty of the return judges was to cast them up and certify for whom the majority had been given. The county returns were, as to them in the performance of this duty, conclusive. They could not be disregarded in the least, excepting perhaps for plain clerical errors, and could not be set aside. They were to be the evidence upon which the return judges should alone act. The judges' certificate and returns were to be the primâ facie commission of the senator, and by law it would stand until overruled by regular action of the Senate, in judging of the qualification, under the Constitution, of the member holding it. To hold that the certificate in question was a compliance with the law in this respect, would be to maintain the possibility of a senator being received under a commission certified to have been stained by bribery and fraud. This would be simply preposterous. I shall notice, further on, the groundless assumption that the return judges had jurisdiction of any such

[Commonwealth *ex rel.* Parker *v.* Emminger.]

question as the existence of alleged fraud in the election. We overrule this answer or plea also.

(2.) As to irregularities, and the want of compliance with the law on part of the election officers of the township or district elections, and the alleged haste and want of care on part of the return judges of the county in convention, all this lies back of the returns, which we have just said were conclusive on the return judges of the district. From these returns their duty was to cast up and certify their return. This plainly-expressed duty clearly excluded the exercise of any other duty inconsistent with it. *Expressio unius est exclusio alterius.* We have never heard it contended that the authority given to the district return judges to perform their plain duty, carried with it a general supervisory power to look into all that preceded the county returns. There is no such thing in the law, and it would be a sad thing for our institutions if it were so. This plea or answer is untenable, and is overruled also.

(3.) In this plea the respondent alleges bribery and fraud in the election as an excuse for not certifying as he was required by law to do. We hope this is not true. But even if it were, he was not the authority to examine into it or act upon it. Nor are we, upon whom the answer seeks to cast the responsibility of investigating it. This we have distinctly said in Hulseman *v.* Rems, 5 Wright 396, and if it had never been said, we would say it now. It is for the Senate to investigate charges of this nature. The Constitution expressly says so, and to that body it is proper, and the only place it is proper, legally to make such charges. If they prove true, that body will do its duty doubtless, and expel any member from its hall who is there by such means. The remedy for all this is by contesting the election of the party charged. The law is ample for this, and this is the constitutional mode of redressing and punishing such a wrong. The respondent could hardly have contemplated the consequences of the precedent he would set if sustained in this plea, or we think he would not claim it as a protection. There would be few returns of election of senators, congressmen or representatives ever made, if such a thing were possible to be maintained. There would always be enough, I regret to believe, to suggest fraud in the election, and thereby prevent any certificate of elections being given. The consequence of this would be that our legislative bodies would never organize. A few with certificates might keep all others out, and thus prevent any organization sufficient to try the right of those to whom certificates of election ought to have been given, but have been denied. Let this be the rule, and our representative system would utterly fail of its purpose, and anarchy and confusion would inevitably result. I must do the learned and able counsel for the respondent the justice to say, that they disclaimed all such power in the return

judges of the district. They planted themselves alone on the ground that the respondent had already substantially complied with the Act of Assembly in the certificate signed by him. This we have shown, we think, was a mistake; but we need not recur to it again. This plea or answer is also overruled. Our unhesitating conclusion is that the respondent has presented nothing whatever to shield him from a peremptory mandamus, which it will be our duty to award in this case.

No question was made as to the power of this court to take jurisdiction of this case; that is settled by many decisions: 8 Casey 218; 10 Id. 496; 1 Wright 237–277; 3 P. F. Smith 9–71, and many other cases.

And now, to wit, November 16th 1871. This cause having been argued by counsel and considered by the court, it is ordered and adjudged that judgment be entered upon the demurrer for the Commonwealth, and that you the defendant, John Emminger, be and you are hereby peremptorily commanded forthwith, and jointly with Henderson G. Skiles, the return judge of Franklin county, to cast up and make out duplicate returns, according to law, of all the votes given for the office of senator in the senatorial district of this Commonwealth, No. 19, composed of the counties of Cumberland and Franklin, and of the name of the person elected senator in the same, as shown by the said county returns of the general election held as aforesaid on the second Tuesday of October last past, and transmit the same, as required by the eighty-second section of the Act of Assembly of the 2d of July, A. D. 1839, to wit, one of said returns to the secretary of the Commonwealth and to deposit one in the office of the prothonotary of the county of Cumberland, and make out and transmit to the person who shall appear by casting up said returns of said district to be elected senator at said election, a certificate notifying him of his said election; and that you the respondent pay the costs of suit.