IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Dillow,           :
                             :
              Appellant      :
                             :
         v.                  : No. 20 C.D. 2026
                             : Submitted: January 26, 2026
Lawrence County Board of     :
Elections, Hickory Township, :
Jason A. Medure, in his capacities :
as County Solicitor and Township :
Solicitor, and Randy Brown   :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED: March 16, 2026


          Michael A. Dillow appeals from the December 29, 2025 order of the
Lawrence County Court of Common Pleas (trial court) which denied Dillow's
Application for Emergency/Expedited Relief (Application) in its entirety.[1] Dillow
sought therein to enjoin the Lawrence County Board of Elections (Board) from
certifying Randy Brown[2] as the winner of the November 4, 2025 election for Hickory

_____

[1] This election-related appeal, at least at first blush, seems unorthodox yet otherwise
uncomplicated. Indeed, we are not usually tasked with resolving election disputes filed by the
candidate who received the greatest number of votes in an election. But our review of the matter
*sub judice* indicates that this case is more complicated than the parties initially believed. In fact,
what has unfolded since the November 4, 2025 Election can only be described as a series of
unfortunate events.

[2] Brown joined this action as an intervenor in the trial court below.

Township (the same or Township) Supervisor because Brown received fewer write-in votes than Dillow himself. We reverse.

If nothing else, at least the facts underlying this appeal are straightforward. On November 4, 2025, Dillow received 57 write-in votes for the office of Hickory Township Supervisor – receiving the greatest number of votes in the election. Trial Court Order, 12/29/25, ¶1. Brown received 55 write-in votes. *Id.* Nevertheless, the Board indicated its intention to declare Brown as the winner of the election because it determined that Dillow was registered as a voter in Scott Township on Election Day and was therefore ineligible to serve as Hickory Township Supervisor under Section 401 of The Second Class Township Code,[3] 53 P.S. §65401. *Id.* ¶¶2, 8. More particularly, the Board's solicitor, also serving as the Hickory Township solicitor, related the following in an email to the Hickory Township Board of Supervisors:

> Dillow is not registered to vote in Hickory Township. As such, [] Dillow is not qualified to hold office in Hickory Township until he changes his voter registration. The County will not declare [] Dillow as the write-in winner of the Supervisor's race. Randy Brown will be declared winner and given the opportunity to accept his election victory.

Original Record (O.R.) at Item No. 7.

Upon learning of the Board's intention, and prior to the Board's scheduled certification of the Election on November 21, 2025, Dillow filed the Application in the trial court. In pertinent part, relying on Section 1407(a) of the

---

[3] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §65401 ("No person is eligible for the office of supervisor, auditor or tax collector in any township unless that person is an elector of the township.").

Election Code,[4] Dillow requested that the trial court enjoin the Board from certifying the Election and that it hold a hearing on the matter. *See* O.R. at Item No. 1. The trial court stayed certification of the Election pending resolution of the Application in an order dated November 20, 2025, while also directing the Board and Hickory Township to file an answer thereto. *Id*. at Item Nos. 2-3.

Notably, in the Board's Answer to the Application, the Board explained that it

> reviews the voter[] registration for all individuals who received the highest amount of write-in votes as a matter of administrative policy and practicality. If said individual is not registered to vote in the municipality (or precinct in the case of party committee representatives), said individual's votes are invalidated. Similar administrative functions occur when an individual attempts to provide the Elections office with a Petition for candidacy in a municipality he/she is not registered or said Petition is unsigned or unnotarized.

O.R. at Item No. 7.

At the hearing, the parties stipulated that Dillow was not registered to vote in Hickory Township on Election Day – although he changed his registration on November 5, 2025. *See* Trial Court's Hearing, Notes of Testimony (N.T.) at 5-

---

[4] Section 1407(a) of the Election Code provides in pertinent part:

> (a) Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election, or regarding any recount or recanvass thereof under sections 1701, 1702, and 1703 of this act, may appeal therefrom within two days after such order or decision shall have been made, whether then reduced to writing or not, to the court specified in this subsection, setting forth why he feels that an injustice has been done, and praying for such order as will give him relief.

Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §3157(a) (emphasis added).

10, 15. But the Board and the Township did not contest Dillow's residency. Although the Board and Brown focused on Dillow's failure to register as an elector in Hickory Township at the time of the Election, neither contested that Dillow was a longtime resident of the Township. *Id.*, N.T. at 9-11. Still, the Board and Brown viewed this as inconsequential. In their view, because Section 401 of The Second Class Township Code mandates that a Supervisor must be "an elector of the township," his failure to register as an elector of Hickory Township by Election Day barred him from holding the office. *Id.*, N.T. at 14-22.

As indicated, the trial court largely accepted these arguments and denied Dillow's Application in its entirety in an order dated December 29, 2025. The trial court believed that the single issue presented by this appeal was whether Dillow was "qualified for the position of Supervisor in Hickory Township, a second class township, as he was registered to vote in Scott Township." Trial Court's Order ¶7. Thus, relying on Sections 401 and 403(c)[5] of The Second Class Township Code, 53 P.S. §§65401, 65403(c), the trial court determined that because Dillow was not a registered elector of Hickory Township on Election Day, he was unqualified for office. *Id.* ¶¶8-10 ("When he won the election, [Dillow] still was registered to vote in Scott Township which demonstrates he was not an elector of Hickory Township. Resultantly, [Dillow] was not qualified to assume the office of Supervisor under The Second Class Township Code."). The trial court likewise terminated its earlier stay of the Board's certification. *Id.* ¶12. According to the Board, it certified Brown as the winner of the election for Hickory Township supervisor on January 5, 2026.

---

[5] Section 403(c) of The Second Class Township Code provides: "Supervisors shall reside in the township from which elected and shall have resided in that township continuously for at least one year before their election." 53 P.S. §65403(c). The trial court therefore construed The Second Class Township Code as having elector and residency requirements. Trial Court's Order ¶10.

4

Board's Brief at 4. Dillow, however, filed a Notice of Appeal in this Court on January 2, 2026.[6]

Before this Court, Dillow asserts a litany of issues,[7] but each issue raised and his subsequent argument can be distilled into the following: the Board exceeded its authority by disqualifying Dillow as the victorious write-in candidate in favor of the runner-up. Dillow's Brief *passim*. Dillow therefore requests that this Court reverse the trial court's decision and order that Dillow be sworn in as Township Supervisor.

For its part, the Board largely advances the arguments it raised before the trial court. It also argues, however, that in invalidating the write-in votes cast for Dillow and disqualifying him from the election, the Board was simply acting within the authority conferred upon it by the Election Code to administer elections. Board's Brief at 4 (citing 25 P.S. §§2641, 2642). So too, the Board reiterates that the actions it took are similar to those it might take when a candidate attempts to file a nominating petition. *Id*. at 5. To the extent Brown's own arguments depart from the Board, he argues that Dillow's disqualification means that he is the duly elected supervisor of Hickory Township pursuant to Section 1417 of the Election Code, 25 P.S. §3167.

As we see it, and as discussed *infra*, the Board plainly exceeded its authority under the Election Code to disqualify Dillow from holding public office and the trial court then compounded this error by denying the Application in its

---

[6] The trial court filed a Pa.R.A.P. 1925(a) opinion on January 21, 2026, largely reiterating its December 29, 2025 order.

[7] To the extent our restatement of the issues does not encompass every issue raised by Dillow, we need not reach them given our disposition. *See* Dillow's Brief at 6-8.

entirety and terminating its stay of the Board's certification. For his part, Dillow then failed to seek a stay of the certification pending his appeal in *this* Court, thereby enabling the Board to wrongfully certify the election in Brown's favor. The parties' arguments, then, miss the greatest difficulty in now resolving this appeal: the Board has already certified Brown as Hickory Township Supervisor thereby mooting this dispute.

It is well settled that an actual case or controversy – one that is real rather than hypothetical – must be extant at all stages of litigation, not merely at the time of filing. *Harris v. Rendell*, 982 A.2d 1030, 1035 (Pa. Cmwlth. 2009). However, a once extant case or controversy may become moot if a 'change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect.'" *In re General Election (2024)*, 328 A.3d 606, 611 (Pa. Cmwlth. 2024) (quoting *Burke ex. rel. Burke v. Independent Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014)).

While an extant controversy exists here, namely, whether Dillow was unduly disqualified from the election for Hickory Township Supervisor, we are unaware of any authority which would permit this Court or the trial court to order the Board to decertify the results of the Election. *See, e.g.*, *Ioannidis v. Wolf* (Pa. Cmwlth., No. 635 M.D. 2020, filed July 8, 2021), slip op. at 8-9 (discussing effect of certification on continued viability of election challenges).[8] This Court therefore must determine what order we could issue that would have any practical effect, and, upon review, we must deem this matter technically moot. *Mistich v. Pennsylvania*

---

[8] *See* Pa. R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

6

*Board of Probation and Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004) ("[C]ourts will not enter judgments or decrees to which no effect can be given.").

Still, even where a dispute is technically moot, we may nevertheless reach the merits under certain circumstances, such as where a dispute involves an issue of great public importance. *Rendell v. Pennsylvania State Ethics Commission*, 983 A.2d 708, 719 (Pa. 2009). We are inclined to apply that exception here. To wit, this matter implicates the proper mechanisms, if any, for challenging the qualifications of a victorious write-in candidate. *See also In re Petitions to Open Ballot Box Pursuant to 25 P.S. §3261(A)*, 295 A.3d 325, 332-33 (Pa. Cmwlth. 2023). However, given that Dillow filed the Application pursuant to Section 1407 of the Election Code, we will confine our review accordingly. That is, we will limit our review in this election contest "to [an] examination of the record to determine whether the trial court committed errors of law and whether the court's findings were supported by adequate evidence." *Dayhoff v. Weaver*, 808 A.2d 1002, 1005 n.4 (Pa. Cmwlth. 2002).

In the proceedings below, the Board and the trial court undertook an unfamiliar and little-explored legal question when they inquired upon Dillow's qualifications for office. Indeed, notwithstanding the Board's comparison to the provisions of the Election Code relating to fatally defective nominating petitions or papers, *see, e.g.*, 25 P.S. §§2861-2960, the Election Code is silent on the matter as it concerns write-in candidates.

Nevertheless, by way of a footnote, our Supreme Court has explained:

> Unlike candidates who pursue general elections ballot access by nomination petitions or papers, the Election Code does not require write-in candidates to file anything attesting to or substantiating their qualifications or eligibility for office . . . . ***Nor does it provide a***

7

> ***mechanism for challenging the qualifications of
> victorious write-in candidates after their nomination or
> election. Except perhaps in the rare case in which quo
> warranto might lie, a circumstance that we have no
> occasion to explore today, once a write-in candidate is
> certified as the winner the courts are effectively
> powerless to interfere.***

*In re Jordan*, 277 A.3d 519, 532 n. 18 (Pa. 2022) (emphasis added). Thus, the dispositive error in the proceedings below lies not with the trial court's or the Board's interpretation of The Second Class Township Code or even Dillow's qualifications for office – and we offer no opinion on those issues now. Rather, the dispositive error lies with the Board's authority to invalidate lawfully cast votes for the purpose of denying a write-in candidate's putative victory.

If that were not enough to underscore the Board's error in this matter, we note Section 1404(g)(3) of the Election Code, 25 P.S. §3154(g)(3) (emphasis added), provides: "***If any error*** or fraud is discovered, the county board ***shall compute and certify the votes justly regardless of any*** fraudulent or ***erroneous returns*** presented to it, ***and shall report the facts to the district attorney*** of the proper county for action." This principle is not novel with respect to our election law jurisprudence – in fact, this principle predates the Election Code itself.

For example, in 1867, our Supreme Court observed: "The votes cast at an election for a person who is disqualified from holding office are not nullities. ***They cannot be rejected by the inspectors, or thrown out of the count by return judges***. The disqualified person is a person still, and every vote thrown for him is formal." *Commonwealth v. Cluley*, 56 Pa. 270, 273 (1867) (emphasis added). So too, in *Commonwealth ex. rel. Parker v. Emminger*, 74 Pa. 479, 483 (1871), the Supreme Court determined that an election return judge's sole duty and responsibility was to faithfully tabulate and report the returns. Therein, the return

judges refused to certify a senator-elect's victory on suspicion of fraud and bribery. *Id*. The Supreme Court opined:

> So far from this being the certificate required by law, it was a refusal to certify. The returns were plain and intelligible, at least nothing to the contrary is alleged, and ***the only duty of the return judges was to cast them up and certify for whom the majority has been given***. The county returns were, as to them in the performance of this duty, conclusive. They could not be disregarded in the least, excepting perhaps for plain clerical errors, and could not be set aside. They were to be the evidence upon which the return judges alone should act.

*Id*. at 483 (emphasis).

Thus, while this principle has since been codified at Section 1404(g)(3) of the Election Code, it has long been the law of this Commonwealth that a county board of elections may not *sua sponte* invalidate the votes that it deems to have been cast for an unqualified candidate – especially, so that it might certify the runner-up as victorious.[9] Rather, the county boards have a duty "to compute and certify the votes justly regardless of any fraudulent or erroneous returns presented to it . . . ." *See* 25 P.S. §3154(g)(3). Here, to the extent the Board had concerns regarding Dillow's qualifications to hold the office of Township Supervisor, the Board's recourse was limited to reporting those findings to the Lawrence County District

---

[9] Indeed, while it is beyond the scope of this proceeding, we nevertheless find Brown's argument that he is the duly elected Township Supervisor under Section 1417 of the Election Code perplexing. That provision provides: "Except as otherwise provided by law, the persons receiving the highest number of votes for any office at any election shall be declared elected to such office, up to the number required by law to be elected thereto." 25 P.S. §3167. By Brown's very own stipulation, he did not receive the highest number of votes for the office of Township Supervisor. *See, e.g.*, Brown's Brief at 2-3; *Cluley*, 56 Pa. at 273 ("But surely it cannot be maintained that in any possible contingency the office can be given to [the runner-up] . . . . Under institutions such as ours, there is even greater reason for holding that a minority candidate is not entitled to the office if he who received the largest number of votes is disqualified.").

9

Attorney's Office under Section 1404(g)(3) of the Election Code, rather than invalidating lawfully cast votes by fiat.[10]  *Id.*  It would then be incumbent upon the District Attorney's Office to seek further relief, including an action in *quo warranto* as suggested in *In re Jordan*.  However, because appellate jurisdiction over a matter involving the right to public office is vested exclusively in the Supreme Court, *see* 42 Pa. C.S. §722(2), we will end our analysis here.[11]

---

[10] We also observe that the Board's vague reliance on the provisions of the Election Code which provide for the county boards of elections membership and jurisdiction, *see* 25 P.S. §2641, and its powers and duties, *see id*. §2642, must also fail.  Neither provision empowers the Board to disqualify victorious candidates – write-in or otherwise.  In fact, Section 302(i) of the Election Code, *id*. §2642(i) (emphasis added), empowers the county boards of elections "[t]o investigate election frauds, irregularities, and violations of this act, and ***to report all suspicious circumstances to the district attorney***."  But it confers no greater authority, such as adjudicating the fraud, irregularity, violation, or suspicious act, upon the county boards.

[11] We suppose, then, that the only viable avenue for continued judicial relief in this matter would be a fresh action in *quo warranto* filed in the trial court.  *See In re Jordan*, 277 A.3d at 532 n. 18.  We caution, however, that

> [o]nce a person has been duly elected, the right to exercise the authority of office is not to be lightly disturbed.  A complaint in *quo warranto* is aimed at the right to exercise the powers of the office, which is a public injury, rather than an attack upon the propriety of the actions performed while in office, which would be a private injury.  Accordingly, standing to pursue *quo warranto* is generally within a public entity such as, the Attorney General, or the local district attorney.  *Spykerman v. Levy*, 421 A.2d 641, 648 (Pa. 1980); *Lehman v. Tucker*, [368 A.2d 670, 672 (Pa.] 1977).  A private individual or entity is generally barred from bringing a *quo warranto* action; but a private petitioner will be deemed to have standing where that petitioner can show that it has been specially damaged or has some special right or interest.  *Spykerman*, 421 A.2d at 649; *see also In re One Hundred or More Qualified Electors of Clairton*, [683 A.2d 283, 286-87 (Pa.] 1996) (finding qualified electors lacked standing to bring an action in *quo warranto* for failure to show an interest beyond that shared in common by all citizens of municipality).

**(Footnote continued on next page…)**

Accordingly, we reverse the trial court's order.



MICHAEL H. WOJCIK, Judge

---

*Commonwealth ex rel. Judicial Conduct Board v. Griffin*, 918 A.2d 87, 93 (Pa. 2007) (footnotes omitted); *see also Spykerman*, 421 A.2d at 648 ("Historically, Pennsylvania courts have held that the *quo warranto* action is the sole and exclusive method to try title or right to public office.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael A. Dillow, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : No. 20 C.D. 2026 | |
| | : | |
| Lawrence County Board of | : | |
| Elections, Hickory Township, | : | |
| Jason A. Medure, in his capacities | : | |
| as County Solicitor and Township | : | |
| Solicitor, and Randy Brown | : | |

# **O R D E R**

AND NOW, this 16th day of March, 2026, the December 29, 2025 order of the Lawrence County Court of Common Pleas is **REVERSED**.

_____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Dillow,              :
               Appellant       :
                                 :
        v.                     : No. 20 C.D. 2026
                                 : Submitted: January 26, 2026
Lawrence County Board of Elections,   :
Hickory Township, Jason A. Medure, in :
his capacities as County Solicitor and    :
Township Solicitor, and Randy Brown   :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING OPINION
BY JUDGE WALLACE                         FILED: March 16, 2026

I agree with the conclusion reached by the Learned Majority. The Court of Common Pleas of Lawrence County's (trial court) decision in this matter should be reversed because the Lawrence County Board of Elections (Board) lacked the authority to refuse certification of elections. However, I write separately to note I would have transferred this appeal, at least in part, to the Supreme Court, because the central issue on appeal implicates a person's right to hold public office.

Before addressing my disagreement, I want to emphasize the issue of private standing in *quo warranto* actions. Although the Majority cautions a duly elected

person's right to exercise the authority of office is not to be lightly disturbed, it importantly and correctly notes a *quo warranto* action may be available to oust a person from public office and to prevent continued exercise of authority unlawfully asserted. *In re Prospect Crozer LLC*, 328 A.3d 37, 68 (Pa. 2024). Private persons may have standing to bring a *quo warranto* action when they can demonstrate special damage or some special right or interest. *See Reed v. Harrisburg City Council*, 995 A.2d 1137, 1140-41 (Pa. 2010) (holding "a private party with a special interest in the matter[, such as Mayor Reed,] may institute a *quo warranto* action without first notifying the Attorney General or the local district attorney.").

Now, turning to my point of disagreement, the Majority frames the issue on appeal as simply one involving the Board's authority to refuse to certify the election results for the office of supervisor of Hickory Township in favor of Michael A. Dillow, the election winner. The issue, however, is more nuanced and mixed. The rationale for the Board's refusal rests on its interpretation of Section 401 of The Second Class Township Code, 53 P.S. § 65401. Specifically, whether the term "elector" means that a candidate is required to have registered as an elector of a township by election day to qualify for the position of township supervisor.[1] Maj. Op. at 4. This issue undoubtedly involves a person's right to hold public office.

Due to jurisdictional constraints, I refrain from offering an opinion on the meaning of "elector." This restraint is especially challenging because the Board and

---

[1] Merriam-Webster Online Dictionary defines "elector" as "a person *qualified* to vote in an election." *Elector*, Merriam Webster, https://www.merriam-webster.com/dictionary/elector (last visited Mar. 12, 2026) (emphasis added). Black's Law Dictionary defines "elector" as "[a] voter" or "*qualified* voter," "a person who meets the voting requirements for age, residency, and registration and who has the present right to vote in an election." *Black's Law Dictionary* (12th ed. 2024) (emphasis added). The term "registered elector" denotes a person needs to be *registered to vote*, whereas, as stated, the term "elector" holds no such meaning. *See* 25 Pa.C.S. § 1102 (defining "registered elector" as "[a] qualified elector who is registered to vote").

the trial court did address the meaning of elector. In concluding that an elector of a township must reside in and be registered to vote in that township, the trial court principally relied on *Aukamp v. Diehm*, 8 A.2d 400 (Pa. 1939). *Aukamp* involved who may sign petitions for local option referendums pursuant to the Liquor Control Act and the Beverage License Act. Evaluating the issue under the voter qualification provision of the Pennsylvania Constitution, and applying the Election Code's definition of "qualified elector," our Supreme Court concluded "the legislature used the word 'elector' . . . in the sense of one qualified to vote at the election and therefore one who, at the time of signing the petition for referendum, was registered to vote." *Id.* at 401.

*Aukamp*, however, appears to be in tension with *In re Sullivan*, 160 A. 853 (Pa. 1932),[2] where the Supreme Court explained:

> We cannot agree with the contention which was earnestly advocated before us, and which was also the opinion of the court below, that registration is an essential qualification of an elector. The reference which is made to registration in the first paragraph of the section of the Constitution just quoted [i.e., the former Article 8, Section 1] does not require such a narrow construction of the phrase 'qualified elector.' Registration may be and usually is prerequisite to voting; *but it is not a qualification for the exercise of the franchise*. No attorney is permitted to argue before the bar of this court without being formally admitted; yet no one would contend that the mere motion for admission constitutes a qualification for practice. The same reasoning applies to registration for voting.

*Id.* at 854 (emphasis added). As indicated, this apparent conflict on the meaning of the terms "elector" and "registered elector" is for our Supreme Court to resolve,

---

[2] *In re Nomination of Nader*, 860 A.2d 1, 7 (Pa. 2004) (Saylor, J., dissenting statement) (noting that *Aukamp* and *Sullivan* "are in tension" and that "[a]s between the two decisions, however, *Sullivan* is . . . the better reasoned."). *Aukamp* does not cite or overrule *Sullivan*.

because it implicates a question involving a right to public office. *See* 42 Pa.C.S. § 722(2).

Thus, this Court should have at least transferred the portion of the appeal pertaining to Dillow's qualification for public office to the Supreme Court. *See*, *e.g.*, *Commonwealth v. Spano*, 701 A.2d 566 (Pa. 1997) (The Superior Court affirmed the conviction, but transferred the portion of the appeal concerning defendant's removal from office to the Supreme Court).

If, in the future, after this Court reverses the trial court in this action, Dillow were to file a new, separate, *quo warranto* action to seek Randy Brown's removal as Hickory Township Supervisor, the basis for relief may be identical to what is presently before us. That is, whether the Board misapplied the meaning of the term elector, as used in Section 401, to refuse to certify the election for Dillow.[3] If that is the case, Dillow would file a direct appeal with the Supreme Court. *See Reed*, 995 A.2d at 1139 (The Commonwealth Court, via a single-judge order, transferred the *quo warranto* case to the Supreme Court under Section 722(2)). Because of this, we would be dismissive of judicial resources and the parties' and public interest in resolving this dispute expeditiously, as one quarter of the year has already elapsed since Brown took office.

Accordingly, I disagree with the Majority's decision not to transfer this appeal to the Supreme Court.

_____
STACY WALLACE, Judge

---

[3] Because the trial court has already determined the meaning of the term "elector" in this case, it is conceivable it may reapply that same meaning in subsequent cases. *See Appeal of Coatesville Area Sch. Dist.*, 244 A.3d 373, 378 (Pa. 2021) (*res judicata* "bars actions on a claim, or any part of a claim, which was the subject of a prior action, or could have been raised in that action.").